300 F.3d 1055
 In re Robert E. ALLEN, Debtor,
Atalanta Corporation, Appellant,
v.
Robert E. Allen, Appellee.
In re Robert E. Allen, Debtor,
Anatom Investment Corporation, Appellant,
v.
Robert E. Allen, Appellee.
 No. 01-15301.
 No. 01-15304.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 14, 2002.
 Filed August 16, 2002.
 
 COPYRIGHT MATERIAL OMITTED William E. Robinson, Sacramento, CA, for the appellant.
 Timothy J. Buchanan and Mathew P. Wattoff, Fresno, CA, for the appellee.
 Appeal from the United States District Court for the Eastern District of California; Oliver W. Wanger, District Judge, Presiding. D.C. Nos. CV-99-05800-OWW, CV-99-05801-OWW.
 Before: SNEED, HUG and BERZON, Circuit Judges.
 BERZON, Circuit Judge.
 
 
 1
 In this bankruptcy case, two creditors, Atalanta Corporation ("Atalanta") and Anatom Investment Corporation ("Anatom"), appeal from a confirmation of a plan reorganizing the assets of debtor Robert E. Allen ("Allen"). Atalanta and Anatom hold liens on certain property owned by Allen. Before the bankruptcy court confirmed the reorganization plan, Allen entered into a stipulation with Atalanta and Anatom, approved in a formal order by the bankruptcy court, which permitted Atalanta to foreclose on several of its liens. The bankruptcy court, however, confirmed the reorganization plan before Atalanta could complete foreclosure on the property, and the plan did not permit Atalanta to continue with the foreclosures.
 
 
 2
 Atalanta and Anatom contend that the bankruptcy court erred by confirming a reorganization plan that did not incorporate either the terms of the stipulation between the parties or the bankruptcy court's order approving it. The bankruptcy court and the district court rejected this contention. We do as well and so affirm the decision of the district court.
 
 BACKGROUND
 
 3
 Allen, a kiwi fruit farmer, filed for Chapter 11 bankruptcy in February 1998. Atalanta and Anatom held liens on certain property owned by Allen as security for loans, in the amounts of approximately $1,000,000 and $550,000, respectively. The Atalanta loan fully matured as of June 30, 1997.
 
 
 4
 A bankruptcy petition operates as an "automatic stay" of "any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. § 362(a)(4). After Allen filed for bankruptcy, the present parties entered into a Stipulation for Relief from Automatic Stay ("Stipulation"). The bankruptcy court entered an Order on Motion for Relief from the Automatic Stay ("Stay Relief Order"), approving the Stipulation.
 
 
 5
 The Stay Relief Order provided that on December 1, 1998, the automatic stay would be lifted on five parcels of property owned by Allen, allowing Atalanta to begin foreclosure proceedings on that property. If, however, by February 1, 1999, Allen payed in full a debt he owed to Prudential and also paid $175,000 to Anatom and $325,000 to Atalanta, Atalanta would release the liens on four of those parcels. The Stay Relief Order also stated that on March 1, 1999, the stay would be lifted on three other parcels of property, again permitting Atalanta to begin foreclosure. Finally, the Order directed that Allen would harvest the 1998 kiwi crop and that Atalanta would market it and distribute the proceeds as set forth in the Order.
 
 
 6
 Atalanta subsequently loaned Allen approximately $90,000 to finance the 1998 harvest. On December 16, 1998, Atalanta filed a notice of default on five pieces of Allen's property, beginning — but not completing — foreclosure proceedings.
 
 
 7
 On April 26, 1999, the bankruptcy court confirmed over the objections of Atalanta a plan ("Plan") reorganizing Allen's property. The Plan divides Allen's debts into eight classes.[1] Class 4 consists of claims secured by real property. The Plan further divides class 4 into four subclasses: class 4A, a Davis Group claim;[2] class 4B, a Prudential Insurance claim; class 4C, the Atalanta claim; and class 4D, the Anatom claim.
 
 
 8
 The Plan restructured Atalanta and Anatom's debts to be paid in annual installments, with the entire balance due in balloon payments in May 2004 and May 2005, respectively. The Plan did not incorporate the terms of the Stipulation or the Stay Relief Order and did not permit Atalanta to complete the foreclosure proceedings it had begun on Allen's property.
 
 
 9
 Atalanta and Anatom appealed. The district court remanded to the bankruptcy court to set forth specific findings as to the interest rate set for the Atalanta and Anatom loans but otherwise affirmed. Atalanta and Anatom timely appealed to this court.
 
 DISCUSSION
 
 10
 "Because this court is in as good a position as the district court to review the findings of the bankruptcy court, it independently reviews the bankruptcy court's decision." Ragsdale v. Haller, 780 F.2d 794, 795 (9th Cir.1986). We review the bankruptcy court's conclusions of law de novo and review its findings of fact for clear error. Id.
 
 A. The Reach of In re Lenox
 
 11
 Atalanta and Anatom contend that the bankruptcy court erred in confirming a reorganization plan that did not incorporate the terms of the Stipulation entered into by the parties, or the Stay Relief Order approving that Stipulation, without first finding "special circumstances" to justify doing so. They base their argument on this court's decision in In re Lenox, 902 F.2d 737 (9th Cir.1990).
 
 
 12
 Lenox presented a situation quite similar to the one in this case. In Lenox, the parties entered into a pre-confirmation stipulation under which the creditors would postpone seeking relief from the § 362 automatic stay and the debtors would make scheduled payments on a loan. Id. at 739. "They also agreed that the terms of the stipulation would bind the [debtors] in any plan of reorganization." Id. The bankruptcy court entered an order approving the stipulation. Id.
 
 
 13
 Despite the agreement, the Lenox debtors filed a plan of reorganization that did not incorporate the stipulation and that altered the schedule of payments. Id. The bankruptcy court confirmed the plan, and the bankruptcy appellate panel ("BAP") affirmed as to the omission of the stipulation. Id.
 
 
 14
 This court reversed the BAP's decision regarding the exclusion of the stipulation. We noted the general rule that "stipulations are not to be lightly set aside." Id. at 739. To modify or reverse a prior order, we held, the bankruptcy court must find that "special circumstances" exist (such as preventing the forfeiture of a family farm) and "must take the maximum steps reasonably practical to put the other party to the stipulation in a position close to what the stipulation gave it." Id. at 740.[3]
 
 
 15
 The bankruptcy court in this case did not make a finding of "special circumstances" before confirming the Plan. So the question comes down to whether the rule of Lenox applies to a case, such as this one, in which a pre-confirmation order modifying the automatic stay does not state — as it did in Lenox — that the terms of the order will bind either the debtor or the bankruptcy court in a plan of reorganization. We answer this question in the negative.
 
 
 16
 The § 362 automatic stay, which comes into existence with the filing of a petition for bankruptcy, prohibits action against the bankruptcy estate only until the bankruptcy court confirms a plan reorganizing the debtor's property. § 362(c)(1) ("[T]he stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate...."). The reorganization plan, rather than the automatic stay or any order affecting it, thereafter controls what actions may be taken in regard to the property. See In re Simons, 113 B.R. 942, 949 (Bankr.W.D.Tex.1990) ("As of the date the order of confirmation is entered, the Agreed Lift Stay Order becomes of no further force or effect. A lift stay order by its own nature is temporal. Of necessity, it must be superseded by any order confirming a plan unless preserved therein."). An order modifying the automatic stay thus operates only until the confirmation of the reorganization plan — unless, of course, as in Lenox, the order itself provides that it will outlast the reorganization.
 
 
 17
 In Lenox, we explained that the BAP had held that the stipulation did not bind the bankruptcy court because:
 
 
 18
 [I]f this were not the case, and a bankruptcy court cannot confirm a plan unless it complied with the stipulation, it could lead to absurd results. A debtor could essentially propose its entire plan via a stipulation with one consenting creditor and court approval. The debtor could then bind all creditors to the terms of the plan without getting consent from the creditors and without even submitting a disclosure statement.
 
 
 19
 902 F.2d at 739. We rejected the BAP's reasoning in Lenox because "stipulations are not to be lightly set aside." Id.
 
 
 20
 But we do not read the Stipulation in this case as implicitly stating that Allen may submit only a reorganization plan that incorporates the terms of the Stipulation. Consequently, the rule that stipulations may not be lightly overturned does not carry the same decisive weight as it did in Lenox. In other words, the Stipulation by its terms lasted only until the confirmation of the Plan, so in confirming the Plan the bankruptcy court did not set aside the Stipulation. Instead, the Stipulation simply ceased to exist at the moment of confirmation.
 
 
 21
 Where, as here, the rule against lightly overturning stipulations has no role to play, the BAP's reasoning, though rejected by this court in Lenox, is persuasive. The Bankruptcy Code sets forth detailed requirements as to the contents of a reorganization plan and the procedures that the bankruptcy court must follow before confirming a plan. See 11 U.S.C. §§ 1121-1129. These rigorous requirements applicable to reorganization plan content and confirmation do not govern orders approving agreements affecting the automatic stay.[4] Requiring that the parties to a stipulation modifying the automatic stay expressly state within that stipulation that it will bind the parties and the court in any future reorganization plan ensures that other creditors and interested parties, as well as the bankruptcy court, will have notice of the intended effect before the bankruptcy court issues an order approving it. With such notice, creditors or their representatives will have an opportunity to object to a pre-confirmation determination of aspects of the reorganization plan, and the possibilities for unfairness feared by the BAP in Lenox will thereby be mitigated.
 
 
 22
 In sum, the bankruptcy court did not err in confirming without a finding of "special circumstances" a reorganization plan that did not incorporate the terms of the Stipulation or the Stay Relief Order because neither document clearly indicated that it would bind either the parties or the court in any subsequent reorganization plan.
 
 B. Equitable and Judicial Estoppel
 
 23
 Atalanta and Anatom further contend that the bankruptcy court abused its discretion by not applying equitable or judicial estoppel to preclude Allen from filing a reorganization plan that did not incorporate the terms of the Stipulation and Stay Relief Order. Allen did not, however, make any misrepresentations or take inconsistent positions. At no point did he agree to file a reorganization plan that incorporated the terms of either of the earlier documents. The bankruptcy court did not, therefore, abuse its discretion in refusing to apply the doctrines of equitable and judicial estoppel. See Mukherjee v. INS, 793 F.2d 1006, 1008 (9th Cir.1986); Hamilton v. State Farm Fire & Casualty Co., 270 F.3d 778, 782 (9th Cir.2001).
 
 C. Fair and Equitable Treatment
 
 24
 Atalanta and Anatom finally argue that the Plan did not treat them fairly and equitably, as required under the "cram down" provision of 11 U.S.C. § 1129(b), because, once again, the Plan did not incorporate the terms of the Stipulation or the Stay Relief Order. Assuming without deciding that § 1129(b) encompasses such considerations, see In re D & F Constr., Inc., 865 F.2d 673, 675 (5th Cir.1989), we reject this argument for the same reasons discussed in the preceding sections. To the extent Atalanta and Anatom appeal the district court's decision as to whether the Plan otherwise met the requirements of § 1129(b), we affirm for the reasons set forth in the district court's thorough opinion.
 
 CONCLUSION
 
 25
 The decision of the district court is AFFIRMED.[5]
 
 
 
 Notes:
 
 
 [1]
 Those are: class 1: administrative expense claims; class 2: priority tax claims; class 3: other priority claims; class 4: claims secured by real property; class 5: claims secured by personal property; class 6: executory contracts and unexpired leases; class 7: unsecured claims; class 8: equity interests
 
 
 [2]
 The Davis Group also entered into a pre-confirmation stipulation with Allen. That stipulation specifically provided that its terms would be incorporated into the reorganization plan. These terms were accordingly so interpreted
 
 
 [3]
 In light of the remand inLenox, Allen's protestation that this case is moot because the bankruptcy court could not now provide effective relief is unavailing. See Lenox, 902 F.2d at 740.
 
 
 [4]
 For instance, the bankruptcy court must find that each impaired class agrees to a reorganization plan or that the plan treats the classes fairly and equitably and does not unfairly discriminate against any class that does not agree. § 1129. The court does not have to make such findings to approve a pre-confirmation stipulation. § 362; Fed.R.Bankr.P. 4001(d)
 
 
 [5]
 To clarify, we affirm the district court's decision in its entirety, including its remand to the bankruptcy court with instruction to make factual findings as to the interest rates set on the loans