**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

In re:  KENNY G ENTERPRISES, LLC,

Debtor,

------------------------------

KENNETH GHARIB,

Appellant,

v.

THOMAS H. CASEY, Chapter 7 Trustee,

Appellee.

No.   16-55007

D.C. No. 8:15-cv-00551-GW

MEMORANDUM[*]

---

In re:  KENNY G ENTERPRISES, LLC,

Debtor,

------------------------------

THOMAS H. CASEY, Chapter 7 Trustee,

Appellant,

v.

No.   16-55008

D.C. No. 8:15-cv-00551-GW

---

[*]   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

KENNETH GHARIB,

         Appellee.

Appeal from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Argued and Submitted April 3, 2017
Pasadena, California

Before: WARDLAW and CALLAHAN, Circuit Judges, and KENDALL,[**] District Judge.

Kenneth Gharib ("Gharib") appeals the district court's decision affirming in part and vacating in part the bankruptcy court's order finding him in contempt of court in the bankruptcy proceedings of Kenny G Enterprises, LLC ("the Debtor"). The district court affirmed the portion of the bankruptcy court's contempt order fining Gharib $1,420,043.70, but vacated the portion of the order imposing $1,000 in daily sanctions. Thomas H. Casey cross-appeals. We have jurisdiction under 28 U.S.C. § 158(d). We affirm in part and reverse in part.

      1.    The district court properly affirmed the bankruptcy court's $1,420,043.70 sanction against Gharib. The bankruptcy court may hold Gharib in

---

[**]    The Honorable Virginia M. Kendall, United States District Judge for the Northern District of Illinois, sitting by designation.

2

civil contempt for failing to comply with his statutory turnover obligations. *See* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."). The record supports the bankruptcy court's decision to hold Gharib in contempt. The bankruptcy court found that on August 14, 2013, Dana Douglas, representing the Debtor, notified Gharib that the Debtor's bankruptcy case was converted from one under Chapter 11 to one under Chapter 7. The conversion triggered Gharib's obligations under 11 U.S.C. § 542(a) and Central District of California Local Bankruptcy Rule ("LBR") 3020-1(b)(5) to turn over to the trustee of the Debtor's estate all of the Debtor's assets that were in Gharib's possession, which amounted to $1,420,043.70. Gharib failed to do so. A year and a half later, after extensive briefing, discovery, and an evidentiary hearing to determine the precise scope of Gharib's turnover obligations and to discover where the assets had gone, the bankruptcy court concluded that "in all likelihood the alleged Iran transaction is entirely fiction and the Hillsborough proceeds [amounting to $1,420,043.70] (or what is left of them) are still here and under Gharib's control." Based on the record before us, we cannot conclude that the bankruptcy court's finding was clearly erroneous. *See Atlanta Corp. v. Allen* (*In re Allen*), 300 F.3d 1055, 1058 (9th Cir. 2002).

3

Because complying with the bankruptcy court's order will cure his contempt, Gharib's contempt is civil, not criminal. *See Shillitani v. United States*, 384 U.S. 364, 368 (1966) (holding that when an incarcerated contemnor "carr[ies] the keys of [his] prison in [his] own pockets" (internal quotation marks omitted), his contempt is civil in nature). Accordingly, the bankruptcy court acted within its 11 U.S.C. § 105(a) civil contempt powers when it sanctioned Gharib in the amount of $1,420,043.70, and did so again when it ordered Gharib incarcerated for his continued failure to comply. *See Cal. Emp't Dev. Dep't v. Taxel* (*In re Del Mission Ltd.*), 98 F.3d 1147, 1151–52 (9th Cir. 1996) (where an entity failed to perform its § 542(a) obligations, § 105 authorized the bankruptcy court's coercive fines); *see also Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828 (1994) ("The paradigmatic coercive, civil contempt sanction . . . involves confining a contemnor indefinitely until he complies with an affirmative command such as an order to pay alimony, or to surrender property ordered to be turned over to a receiver, or to make a conveyance." (internal quotation marks omitted)). Therefore, the district court did not err in affirming the bankruptcy court's $1,420,043.70 sanction against Gharib, and the bankruptcy court acted within its civil contempt authority in detaining Gharib for his continued failure to pay the sanction.

2. However, the district court erred by vacating the portion of the bankruptcy court's order imposing daily sanctions on Gharib for failure to pay the contempt fine. The district court reviewed the bankruptcy court's contempt order only with reference to the language of § 542, which mandates the turnover of "property or the value of such property." 11 U.S.C. § 542(a). From this, the district court erroneously concluded that the amount of the bankruptcy court's sanctions against Gharib had to be cabined to "the value of" the assets Gharib was required to turn over, or $1,420,043.70 only. But in the face of a § 542 violation the bankruptcy court may invoke its contempt power under § 105, which allows the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). *See In re Del Mission*, 98 F.3d at 1151–52 (9th Cir. 1996) (noting that § 105(a) provides the remedy for a § 542(a) violation). As long as the sanctions are coercive in nature and not punitive, § 105(a) articulates no specific monetary limit on the scope of contempt sanctions available to the court. To the contrary, the Supreme Court has noted that "a per diem fine imposed for each day a contemnor fails to comply with an affirmative court order . . . exert[s] a constant coercive pressure, and once the jural command is obeyed, the future, indefinite, daily fines are purged." *Int'l Union*, 512 U.S. at 829. Therefore, where per diem fines can be prospectively

purged "through full, timely compliance" with the court's order, then daily fines "operate[] as a coercive imposition upon the defendant . . . to compel [his] obedience." *Id.* at 830 (internal quotation mark omitted). Because this precisely describes the nature of the $1,000 daily sanctions the bankruptcy court imposed, the court acted within its § 105(a) civil contempt authority when it imposed them.

3. Because the monetary sanctions imposed and Gharib's ensuing incarceration for noncompliance with those sanctions are properly coercive, they are not punitive. However, we are mindful that Gharib has remained incarcerated for civil contempt since May 2015. At some point, due process considerations will require the bankruptcy court to conclude that Gharib's continued detention and the daily $1,000 sanctions have ceased to be coercive and instead have become punitive. When that occurs, Gharib must be released from custody.

4. In light of our disposition, we decline to reach Gharib's claim that he lacked notice of the bankruptcy court's August 14, 2013 oral temporary restraining order.

**AFFIRMED IN PART; REVERSED IN PART.**