FILED

JAN 11 2019

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC-18-1172-LSTa |
| CLIFFORD ALLEN BRACE, JR., | Bk. No. 6:11-bk-26154-SY |
| Debtor. | |
| CLIFFORD ALLEN BRACE, JR., | |
| Appellant, | |
| v. | MEMORANDUM[*] |
| STEVEN M. SPEIER, Chapter 7 Trustee, | |
| Appellee. | |

Argued and Submitted on November 29, 2018
at Pasadena, California

Filed – January 11, 2019

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Scott Ho Yun, Bankruptcy Judge, Presiding

---

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Appearances:    Clifford Allen Brace, Jr., pro se on brief; David Edward
                Hays of Marshack Hays LLP argued for Appellee.

———————

Before: LAFFERTY, SPRAKER, and TAYLOR, Bankruptcy Judges.

## INTRODUCTION

Debtor Clifford Allen Brace, Jr. appeals the bankruptcy court's order finding him in contempt, determining violations of the automatic stay, imposing compensatory and noncompensatory fines, and authorizing issuance of a writ of bodily detention. The bankruptcy court issued the order based on Mr. Brace's violations of the automatic stay and failure to comply with the bankruptcy court's prior orders requiring Mr. Brace to turn over to the chapter 7[1] trustee ("Trustee") real properties adjudicated to be property of the estate and to account for and turn over rents collected from the leasing of those properties. The court also found Mr. Brace in contempt for filing a state court lawsuit against Trustee and his wife for alleged intentional interference with the leases; that lawsuit has been dismissed.

Although Mr. Brace neither filed an opposition to the bankruptcy court's order to show cause nor appeared at the hearing thereon, we have

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

discretion to review the order on appeal and will do so. We thus DENY Trustee's motion to dismiss the appeal.

Mr. Brace has not demonstrated that the bankruptcy court abused its discretion in finding Mr. Brace in contempt and imposing compensatory sanctions; nor has he established an abuse of discretion in determining that a writ of bodily detention is an appropriate sanction. But the bankruptcy court made insufficient findings to support its imposition of the $5,000 punitive sanction. Additionally, the order on appeal lacks clarity as to what actions are required of Mr. Brace in order to purge his contempt. Accordingly, we AFFIRM certain determinations of the bankruptcy court but VACATE and REMAND as set forth below.

## FACTUAL BACKGROUND

In 2004, Mr. Brace purported to transfer his interests in two real properties, one located in Redlands, California, and the other in San Bernardino, California (the "Properties"), into the Crescent Trust dated July 30, 2004 ("Crescent Trust"). Shortly thereafter, Mr. Brace, as trustee of the Crescent Trust, executed deeds of trust encumbering each of the Properties (the "Deeds of Trust"). The Deeds of Trust, which were recorded August 19, 2004, purported to secure debts owed by his mother, G.E. Johnson, to Professional T.D. Services, Inc.

In 2007, full reconveyances of both Deeds of Trust, signed by Mr. Brace, as Trustee of the Geraldine Elizabeth Johnson Living Trust, were

recorded with the San Bernardino County Recorder (the "Reconveyances").

Mr. Brace filed a chapter 7 case in May 2011. Trustee filed an adversary proceeding against Mr. Brace and his non-debtor spouse seeking to avoid Mr. Brace's transfers of the Properties into the Crescent Trust under the California Uniform Fraudulent Transfer Act.[2] The bankruptcy court entered judgment in favor of Trustee avoiding the transfers and adjudicating that the entirety of the Properties constituted property of the bankruptcy estate (the "Judgment"). The Judgment also ordered turnover of the Properties. This Panel affirmed the Judgment.[3]

---

[2]Trustee also sought to revoke Mr. Brace's discharge. The fraudulent transfer and § 727 issues were bifurcated for trial. On May 15, 2017, the bankruptcy court entered judgment in favor of Trustee on his claim under § 727(d)(2). Mr. Brace appealed that judgment to the Panel, which dismissed the appeal on September 11, 2017 for lack of prosecution.

[3]Mr. Brace appealed the Panel's decision to the Ninth Circuit Court of Appeals (No. 17-60032). The sole issue presented on appeal was whether the Panel erred in affirming the bankruptcy judge's finding that although title to the Properties was held by Mr. and Mrs. Brace as joint tenants prior to the transfers to the Crescent Trust, and the Judgment restored title to that status, the Properties were nevertheless community property and thus property of the estate in their entireties under § 541. Mr. Brace did not appeal that portion of the bankruptcy court's ruling avoiding the transfers into the Crescent Trust.

Oral argument in that appeal was held on August 10, 2018. On November 8, 2018, the Court of Appeals issued an order certifying to the Supreme Court of California the question of whether the form of title presumption set forth in section 662 of the California Evidence Code overcomes the community property presumption set forth in section 760 of the California Family Code in chapter 7 bankruptcy cases under the circumstances presented.

4

On March 20, 2017, a few days after the Panel issued its decision affirming the Judgment, Mr. Brace, in his capacity as the alleged trustee of the Geraldine Elizabeth Johnson Living Trust, recorded rescissions of the Reconveyances with the San Bernardino County Recorder.

Shortly thereafter, on April 5, 2017, Mr. Brace filed with the Superior Court of the State of Arizona, Maricopa County ("Arizona Superior Court"), an Application for Tardy Informal Probate of Will and Appointment of Personal Representative along with a copy of Mrs. Johnson's will. The Arizona Superior Court appointed Mr. Brace as personal representative of the Geraldine Elizabeth Johnson probate estate (the "GEJ Estate"). According to the application, Mrs. Johnson had passed away on August 26, 2004.

On May 17, 2017, Mr. Brace, purportedly acting as personal representative of the GEJ Estate, recorded Notices of Default and Elections to Sell against each of the Properties ("NODs"), referencing the Deeds of Trust. A few days later, Mr. Brace filed an inventory and appraisement of property in the Arizona Superior Court, listing the Deeds of Trust as personal property of the GEJ Estate. Then, on July 20, 2017, Mr. Brace recorded notices of rescission of both NODs.

In the meantime, Trustee commenced informal efforts to recover the Properties for the estate. Trustee requested that Mr. Brace turn over the Properties and rents collected and provide an accounting and information

5

regarding the tenants occupying the Properties. Also, in August 2017 Trustee filed a motion for an order determining violation of the automatic stay, which the bankruptcy court granted, finding that Mr. Brace's post-Judgment rescissions of the Reconveyances violated the automatic stay and were thus void ab initio (the "Stay Violation Order"). Because Mr. Brace did not comply with Trustee's informal requests, in January 2018 Trustee filed a motion for turnover of the Properties and for an accounting and turnover of rents, which the bankruptcy court granted in part. In its order for turnover, entered February 21, 2018 ("Turnover Order"), the court ordered Debtor to comply with all of the Trustee's requests for access to the Properties; provide an accounting of rents; turn over rents within fifteen days; vacate the Properties; and turn over the Properties to Trustee. The Turnover Order also prescribed a procedure for removal of Mr. Brace's personal items from the Properties. Mr. Brace did not appeal either the Stay Violation Order or the Turnover Order.

In the meantime, in December 2017, Mr. Brace leased both Properties to third parties. Then, in April 2018, in his capacity as personal representative of the GEJ Estate, Mr. Brace, through counsel, filed a complaint in the Arizona Superior Court against Trustee and his wife (the "Arizona Action"). The complaint alleged intentional interference with written contract based on Trustee's attempts to gain possession of the Properties and evict the tenants. In addition to seeking compensatory and

punitive damages, the GEJ Estate requested: (I) a declaration that the bankruptcy court lacked jurisdiction over the probate estate assets–specifically, the Deeds of Trust; and (ii) a preliminary injunction requiring Trustee "to refrain from interfering further with any of Plaintiff's contracts regarding the lease of the Properties."

Consequently, on May 7, 2018, Trustee filed an "Emergency Motion re: Violations of the Automatic Stay; and (2) Adjudications of Contempt" (the "Contempt Motion"). The Contempt Motion sought declarations that: (I) Mr. Brace's filing of the Arizona Action violated the *Barton* doctrine because Mr. Brace had not sought permission from the bankruptcy court to sue Trustee;[4] (ii) the filing of the Arizona Action was a violation of the automatic stay that was void and an act of contempt; (iii) Mr. Brace's conduct in entering into lease agreements with third parties was void as violative of the automatic stay and constituted acts of contempt; and (iv) Mr. Brace's failure to turn over the rents violated the stay and was an act of contempt. Trustee also sought an order directing Mr. Brace to purge his contempt by: (I) dismissing the Arizona Action in its entirety; and (ii) turning over control of (a) the Properties and (b) all rents, no later than May 16, 2018. Failing Mr. Brace's timely compliance, Trustee sought an

---

[4]*See Barton v. Barbour*, 104 U.S. 126 (1881); *Jeffrey v. Fort James Corp.*, 421 F.3d 963, 970 (9th Cir. 2005) (party must first obtain leave of the bankruptcy court before it initiates an action in another forum against a bankruptcy trustee or other officer appointed by the bankruptcy court for acts done in the trustee's official capacity).

7

order authorizing the United States Marshal to apprehend and hold Mr. Brace in custody until he purged his contempt. Finally, Trustee sought civil contempt sanctions in the amount of Trustee's attorney's fees and costs incurred in enforcing the Turnover Order.[5]

The next day, May 8, 2018, the bankruptcy court issued an order to show cause ("OSC") finding that cause had been shown for finding that Mr. Brace was in contempt of the Judgment and Turnover Order. The court ordered Mr. Brace to purge his contempt no later than May 23, 2018 by, as the court stated:

    a.    Dismissing the Complaint in its entirety as against all defendants with prejudice;

    b.    Turning over possession and control of the Properties and all Rents to the Trustee or his agents; and

    c.    Filing a declaration with supporting evidence with this court attesting in detail as to the actions he has taken to purge his contempt.

---

[5]According to the Contempt Motion and supporting declaration of Judith E. Marshack, on April 9, 2018, Trustee's counsel contacted Mr. Brace's Arizona counsel, Jeffrey Harris of Titus Brueckner & Levine PLC ("TBL"), and informed Mr. Harris of the bankruptcy case and relevant orders issued by the bankruptcy court. Mr. Harris had been unaware of these circumstances but agreed to cooperate in getting the Arizona Action dismissed. Thereafter, TBL withdrew from representing Mr. Brace in the Arizona Action. Mr. Harris nevertheless appeared at the hearing on the OSC and indicated to the court that the case had not yet been dismissed because the judge assigned to the case was temporarily unavailable and the judge handling the case wanted the originally assigned judge to determine how to proceed. The Arizona Action was eventually dismissed sua sponte.

The court further ordered Mr. Brace and his counsel personally to appear and show cause why sanctions should not be imposed for violations of the Judgment and Turnover Order, including:

1. Determining that the Complaint, which seeks control over the Properties and the Rents, violated the automatic stay, the Judgment, and the Turnover Order, and is void and constitutes an act of contempt;

2. Issuing a writ of bodily detention and warrant for civil arrest under the court's civil contempt power directing the United States Marshals Service to arrest and incarcerate the Debtor until he purges his contempt;

3. Imposing sanctions on the Debtor in the amount of $5,000 for violating the Judgment and Turnover Order; and

4. Imposing sanctions on the Debtor in an amount to be proven to compensate the estate for its attorneys' fees and expenses incurred in enforcing the Judgment and Turnover Order.

Mr. Brace did not file a response, nor did he appear at the show cause hearing.[6] Although his former Arizona counsel, Jeffrey Harris, did appear, he did not do so as Mr. Brace's advocate; his sole contribution to the proceedings was to update the court on the status of the Arizona Action. The bankruptcy court granted the Contempt Motion. The court noted that

---

[6]The record reflects that both Mr. Brace and his counsel, Stephen Wade, were properly served with both the OSC and the order rescheduling the hearing, and Mr. Brace does not argue otherwise.

Mr. Brace had had his discharge denied due to fraud and that the court had entered the Judgment based on its finding that the creation of the Crescent Trust was part of a scheme to defraud creditors. The court's additional findings included:

- Mr. Brace is a bad faith debtor.

- Mr. Brace never sought a stay pending appeal of the Judgment.

- Mr. Brace has refused to comply with the Judgment, necessitating the issuance of the Turnover Order.

- Mr. Brace has refused to comply with the Turnover Order.

- Mr. Brace filed the Arizona Action in violation of the stay, the Judgment, the Turnover Order, and the *Barton* doctrine. Thus the filing of the Arizona Action is void and constitutes an act of contempt.

- Mr. Brace's filing of the Arizona Action was in bad faith.

- The court gave Mr. Brace multiple opportunities to comply with the Judgment and the Turnover Order, but he did not file a response or provide any evidence of efforts to comply.

Based on the foregoing, the bankruptcy court ruled:

At this point, unfortunately, I have no choice here but to impose further sanctions and remedies against Mr. Brace for his continuing violation of the automatic stay, his bad faith conduct, his refusal to comply with the judgment and the turnover order.

. . . .

I gave him an opportunity [to comply] as part of the turnover order. He never complied. Gave him an opportunity by issuing this order to show cause, giving him ample time to comply with the order. He has failed to do so. In fact, his actions in connection with initiating the probate action in Arizona has really, really convinced me there is no other intermediate remedy available to get Mr. Brace to comply with the Court's order than a bodily detention order. I've only done that once before. I hate to do it.

Bankruptcy courts have very limited power to issue a bodily detention order. It's only for civil contempt. But here, I've given Mr. Brace so many opportunities to just comply. And he had a fair trial, represented by counsel, that lasted multiple days. And . . . it's on appeal. He never sought a stay pending an appeal. There is nothing more that I think I can do. There is no lesser remedy at this point that I can try. Every other lesser remedy I've issued in trying to get Mr. Brace to comply with the judgment, and he is just not doing it. . . .

The court acknowledged the harshness of its ruling but concluded:

And I hate doing it. I know Mr. Brace is really elderly. I know he has health problems. I know his wife has got issues as well, but I've really tried to get Mr. Brace to just be nice and just comply with the law. And I think I've had it. This is it. Even now I'm giving him an opportunity to contest the attorney's fees.[7]

---

[7]The bankruptcy court had instructed Trustee's counsel to submit an order and declaration regarding fees incurred in connection with the Arizona Action. The court stated that it would hold the order for fourteen days to give Mr. Brace the opportunity

(continued...)

And I just don't know if there's any other remedy at this point for a man who just flat out refuses to comply with any judgment or order, and doesn't even show up to hearings in order to show cause. And instead, schemes behind the Court's back to file other lawsuits.

On June 19, 2018, the bankruptcy court issued its Order (1) Adjudicating Debtor Clifford Allen Brace, Jr., in Contempt; (2) Determining Violations of the Automatic Stay; (3) Authorizing Issuance of a Writ of Bodily Detention of Debtor Clifford Allen Brace, Jr. ("Contempt Order"). In the Contempt Order, the court found Mr. Brace in contempt and imposed the following sanctions:

- A $5,000 sanction for violating the Judgment and the Turnover Order;

- A sanction of $10,994.08, payable to Trustee, as compensation for attorney's fees and costs incurred by Trustee in connection with the Arizona Action, the Contempt Motion, and the June 5 civil contempt hearing;

- Issuance of a writ of bodily detention and warrant for civil arrest, under which the court authorized the United States Marshall Service to arrest and incarcerate Mr. Brace until he reappears at a rescheduled hearing on the Contempt Motion or

---

[7](...continued)
to object to the fees. He never did so.

until the court determines that Mr. Brace has fully purged all contempt.

Mr. Brace timely appealed. Upon Mr. Brace's motion, a motions panel imposed a stay pending appeal of the portion of the Contempt Order providing for a writ of bodily detention and warrant for civil arrest.

Mr. Brace waived oral argument for this appeal.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Should this appeal be dismissed for Mr. Brace's failure to participate in the proceedings in the bankruptcy court?

Did the bankruptcy court have jurisdiction to issue the Contempt Order?

Did the bankruptcy court abuse its discretion in imposing civil contempt sanctions on Mr. Brace?

## STANDARDS OF REVIEW

Whether the bankruptcy court had subject matter jurisdiction is a question of law that we review de novo. *McCowan v. Fraley (In re McCowan)*, 296 B.R. 1, 2 (9th Cir. BAP 2003).

We review a bankruptcy court's award of civil contempt sanctions for abuse of discretion. *Kelly v. Wengler*, 822 F.3d 1085, 1094 (9th Cir. 2016);

13

*Stasz v. Gonzalez (In re Stasz)*, 387 B.R. 271, 274 (9th Cir. BAP 2008).

To determine whether the bankruptcy court abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, whether the bankruptcy court's application of the legal standard was illogical, implausible, or "without support in inferences that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc).

## DISCUSSION

### A.    Motion to Dismiss

Trustee has moved to dismiss this appeal on the grounds that Mr. Brace failed to file an opposition or appear at the hearing on the Contempt Motion. As such, Trustee contends that Mr. Brace has forfeited his right to appeal the Contempt Order.

As a general rule, a federal appellate court will not consider an issue raised for the first time on appeal. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010). We do, however, have discretion to consider such arguments. *Id.* We may consider issues not raised in the bankruptcy court where:

> (1) there are exceptional circumstances why the issue was not raised in the trial court; (2) new issues have become relevant while the appeal was pending because of a change in the law; (3) the issue presented is purely one of law and the opposing

14

party will suffer no prejudice as a result of the failure to raise the issue in the trial court; or (4) plain error has occurred and injustice might otherwise result.

*Kaass Law v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1293 (9th Cir. 2015) (citation and alteration omitted).[8]

Mr. Brace has not offered any explanation for his failure to file a response or appear at the hearing on the OSC. Nor has he addressed any of the other relevant factors. His only argument in response to the motion to dismiss is that he is challenging the bankruptcy court's subject matter jurisdiction, and such an objection may be raised at any time. Mr. Brace is correct that a challenge to subject matter jurisdiction may be raised at any time before the order becomes final. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) (objection that federal court lacks subject matter jurisdiction may be raised at any stage in the litigation, even after trial and the entry of judgment). As discussed below, Mr. Brace's jurisdictional challenge is meritless.

Nevertheless, we generally make reasonable allowances for pro se litigants. *Read v. Duck (In re Jacksen)*, 105 B.R. 542, 543-44 (9th Cir. BAP

---

[8]Other Ninth Circuit decisions have recited a three-part test: (1) the exceptional case in which review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process; (2) when a new issue arises while appeal is pending because of a change in the law; or (3) when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d at 992. In substance, the factors are essentially identical.

1989). Consideration of the issues on appeal would not require any further development of the record, and Trustee has fully briefed the jurisdictional issue. And as discussed below, the bankruptcy court, at worst, exceeded its civil contempt authority by imposing a punitive sanction, and, at best, failed to make sufficient findings to support the imposition of that sanction. Perhaps most importantly, the order on appeal is one that could result in Mr. Brace being incarcerated. Accordingly, we find that "justice will be better served" if we address Mr. Brace's arguments on appeal. *See id.*

**B.    The bankruptcy court had subject matter jurisdiction to hold Mr. Brace in contempt and impose sanctions.**

Mr. Brace's primary argument on appeal is that the bankruptcy court lacked jurisdiction over the assets of the GEJ Estate and thus lacked jurisdiction to issue the Contempt Order. According to Mr. Brace, the "probate exception" prevented the bankruptcy court from interfering with the probate proceedings in state court. He also contends that the GEJ Estate is a separate legal entity that is not subject to the bankruptcy court's jurisdiction. In support, Mr. Brace cites *Marshall v. Marshall*, 547 U.S. 293 (2006). In that case, the Supreme Court clarified the scope of the probate exception:

> [W]hen one court is exercising in rem jurisdiction over a res, a second court will not assume in rem jurisdiction over the same res. Thus, the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from

16

> endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

*Id.* at 311–12 (citations omitted).

Mr. Brace's theory seems to be that the Deeds of Trust were property of the GEJ Estate and that the actions he took in leasing the Properties to third parties, collecting the rents, and suing Trustee were all in his capacity as the personal representative of the GEJ Estate. He also contends that the GEJ Estate paid off a debt owed to Citibank that was secured by the Redlands property and that the GEJ Estate thereafter took possession of that property as "mortgagee in possession" (presumably meaning that the GEJ Estate acquired Citibank's rights under the mortgage). He then argues that, as mortgagee in possession, the GEJ Estate was legally authorized to rent the Properties and collect the rents under the assignment of rents clauses in the Deeds of Trust. As such, according to Mr. Brace, those actions did not violate the stay. He also contends that the bankruptcy court had no jurisdiction over the GEJ Estate based on the fact that although Trustee initially named Mrs. Johnson as a defendant in the fraudulent transfer action, he later dismissed her from that action.

Mr. Brace's theories and arguments misconstrue the bankruptcy court's exercise of its jurisdiction. First, in ruling on the Contempt Motion, the bankruptcy court was not exercising jurisdiction over any property of

17

the GEJ Estate. Rather, it was enforcing the Judgment and Turnover Order under its civil contempt authority, which it was fully authorized to do pursuant to § 105(a).[9] *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1189-90 (9th Cir. 2013).

Second, even if the Deeds of Trust conferred any rights upon Mrs. Johnson or the GEJ Estate with respect to possession of the Properties, the Deeds of Trust were reconveyed prepetition, in 2007, and the bankruptcy court declared Mr. Brace's attempted postpetition rescissions of those reconveyances void as violative of the automatic stay. Mr. Brace did not appeal that ruling. Mr. Brace tries to argue that the Reconveyances were "void on their face and therefore invalid," but he does not allege any facts or point to any evidence or adjudication that the Reconveyances were void or even voidable. Although the Reconveyances were signed by Mr. Brace as Trustee of the Geraldine Elizabeth Johnson Living Trust, while the Deeds of Trust had been signed by him as Trustee of the Crescent Trust, this circumstance alone would unlikely be insufficient to invalidate the Reconveyances. *See Schiavon v. Arnaudo Bros.*, 84 Cal. App. 4th 374, 378 (2000) (under California law, a reconveyance is void if the trustee's signature is forged or if the trustee is unaware of the nature of what he or

---

[9]Although Mr. Brace appealed the Judgment, he did not appeal the bankruptcy court's finding that his interests in the Properties (as distinguished from Mrs. Brace's community interests) were property of the estate. Moreover, he did not seek a stay pending appeal.

she is signing, and voidable if the trustee is aware of what he or she is executing but has been induced to do so through fraudulent misrepresentations).

In short, the probate exception has no application here, as the Contempt Order had no impact on the administration of the GEJ Estate. The bankruptcy court had subject matter jurisdiction to enforce its own orders.

## C. The bankruptcy court did not err in finding Mr. Brace in contempt.

Civil contempt consists of a party's disobedience of a specific and definite court order by failing to take all reasonable steps within the party's power to comply. *In re Dual-Deck Video Cassette Recorder Antitrust Litigation*, 10 F.3d 693, 695 (9th Cir. 1993). The Code grants bankruptcy courts civil contempt power through § 105(a), which provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

The party alleging contempt must show by clear and convincing evidence that the contemnor violated a specific and definite order of the court. *Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1069 (9th Cir. 2002).

Here, the bankruptcy court found Mr. Brace in contempt for (1) filing

the Arizona Action; (2) leasing the Properties to third parties; (3) failing to provide accountings of rents collected; and (4) failing to turn over rents.[10] The bankruptcy court found that each of these acts violated the automatic stay, which qualifies as a specific and definite court order. *In re Dyer*, 322 F.3d at 1191. In addition, the court found that these acts were done in violation of the Judgment and the Turnover Order.

In determining that contempt arose from a willful stay violation, the bankruptcy court must find that the defendant knew of the automatic stay, and the defendant's actions that violated the stay were intentional. *Id.* The defendant must know of the stay and that the stay applies to its conduct; therefore, knowledge of the stay may not be inferred simply because the defendant knew of the bankruptcy. *Id.* at 1191-92. Mr. Brace hints that he did not know that filing the Arizona Action and entering into leases in his capacity as personal representative of the GEJ Estate was a stay violation. But even if that were true, the bankruptcy court had entered and served on Mr. Brace two orders (the Judgment and the Turnover Order) that unequivocally informed Mr. Brace he was required to turn over to Trustee

---

[10]The court also found Mr. Brace in contempt for violating the *Barton* Doctrine by failing to seek and obtain the bankruptcy court's permission to file the Arizona Action. However, if the filing of the Arizona Action were not prohibited by the automatic stay, Judgment, and the Turnover Order, it is difficult to see how the filing of Arizona Action in violation of the *Barton* Doctrine would constitute a violation of a specific court order. Any error in listing this action as grounds for contempt is harmless, however, given that (1) the filing of the Arizona Action violated the court's orders; and (2) the Arizona Action has been dismissed.

the Properties and any rents collected and to provide an accounting. Additionally, the Stay Violation Order informed Mr. Brace that his attempted rescissions of the Reconveyances were void; thus his theory that the GEJ Estate somehow had rights in the Properties or rents based on the Deeds of Trust was groundless. In short, the record supports the bankruptcy court's conclusion that Mr. Brace willfully violated specific and definite orders of the court. And even though the bankruptcy court did not specify that the evidence was clear and convincing, the declaration in support of the Contempt Motion, which outlined the terms of the relevant orders and described Mr. Brace's conduct in violation of those orders, established that Mr. Brace was in violation of the stay, the Judgment, and the Turnover Order.[11] At that point, the burden shifted to Mr. Brace to produce sufficient evidence of his inability to comply to raise a question of fact. *Kismet Acquisition, LLC v. Diaz-Barba (In re Icenhower)*, 755 F.3d 1130, 1139 (9th Cir. 2014). He did not do so.

## D.   Propriety of Sanctions

Once the court has made a finding of contempt, it has the discretion

---

[11]Under the clear and convincing standard, the evidence presented by the movant must "place in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable. Factual contentions are highly probable if the evidence offered in support of them 'instantly tilt[s] the evidentiary scales in the affirmative when weighed against the evidence [the non-moving party] offered in opposition.'" *Emmert v. Taggart (In re Taggart)*, 548 B.R. 275, 288 (9th Cir. BAP 2016) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)). As noted, no contrary evidence was presented.

to impose civil contempt penalties. Such penalties "must either be compensatory or designed to coerce compliance." *In re Dyer*, 322 F.3d at 1192 (citation omitted). In contrast, punitive sanctions are not authorized under the court's civil contempt power. *Id.* at 1192-94.

1.  **The bankruptcy court did not abuse its discretion in awarding compensatory sanctions**.

The bankruptcy court imposed compensatory sanctions payable to Trustee in the amount of his fees and costs incurred in connection with the Arizona Action, the Contempt Motion, and the June 5 civil contempt hearing. An award of attorney's fees is an appropriate component of a civil contempt sanction. *In re Dyer*, 322 F.3d at 1195. Moreover, the bankruptcy court afforded Mr. Brace an opportunity to object to Trustee's requested attorney's fees; he did not do so. Accordingly, we find no abuse of discretion in the award of compensatory sanctions.

2.  **The bankruptcy court did not abuse its discretion in issuing a writ of bodily detention.**

The bankruptcy court's civil contempt authority also permits it to order the incarceration of a contemnor as a sanction to coerce compliance with the court's orders, so long as compliance with the orders will cure the contempt. *See Casey v. Gharib (In re Kenny G Enters., LLC)*, 692 F. Appx. 950, 952-53 (2017); *Norrie v. Bliss (In re Norrie)*, No. CC-16-1002-KuKiTa, 2016 WL 6407839, at *7 (9th Cir. BAP Oct. 26, 2016). The bankruptcy court carefully crafted its order to provide that any incarceration would be

22

terminated once Mr. Brace purged himself of his contempt. And although incarceration is a harsh sanction, the court repeatedly emphasized that in light of Mr. Brace's stubborn refusal to comply with the court's orders, it had no choice but to order him incarcerated to force his compliance.

### 3. Remand is required for the bankruptcy court to justify the imposition of the $5,000 sanction.

The bankruptcy court also imposed a $5,000 sanction for "violating the Judgments and the Turnover order." The Sanctions Order states that its provisions are civil rather than criminal and are "designed only to obtain compliance with this court's orders and judgments." But we are concerned that the $5,000 sanction appears to be a punitive criminal sanction.

Civil penalties must either be compensatory or designed to coerce compliance, while even a relatively small fine may be criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance, and the fine is not compensatory. *In re Dyer*, 322 F.3d at 1192; *see also Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994). The Contempt Order does not specify to whom the $5,000 sanction must be paid, which may be a relevant factor in determining whether the fine is compensatory or punitive. *In re Dyer*, 322 F.3d at 1192. Nor is there any express provision for Mr. Brace to avoid this sanction through compliance. Thus, the sanction appears to have been imposed solely to punish Mr. Brace for his repeated violations of the court's orders.

As such, it is a punitive sanction that is, at least facially, beyond the scope of the bankruptcy court's § 105 civil contempt powers. *Id.* at 1193.

Those concerns notwithstanding, the Ninth Circuit has held that "relatively mild" noncompensatory fines may be permissible under some circumstances. *Id.* at 1192 (citing *Zambrano v. Tustin*, 885 F.2d 1473, 1479 (9th Cir. 1989)); *see Ocwen Loan Servicing, LLC v. Marino (In re Marino)*, 577 B.R. 772, 788-89 (9th Cir. BAP 2017) (bankruptcy court erred in precluding itself from considering an award of punitive damages under § 105(a) for violation of discharge injunction). The Circuit, however, has never precisely defined what constitutes "relatively mild" versus "serious" noncompensatory sanctions or what circumstances would justify a noncompensatory sanction. In *Dyer*, the court concluded that the minimum $50,000 sanction imposed in that case was a serious penalty not authorized under the bankruptcy court's criminal contempt powers. *Id.* at 1193. *See also F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1139 n.10 (9th Cir. 2001) (noting that a $500,000 fine was a serious penalty even for a wealthy individual).[12]

_____

[12]There are Ninth Circuit authorities suggesting that any noncompensatory sanction above $5,000 (in 1989 dollars) is a "serious" sanction warranting criminal due process protections. *See In re Dyer*, 322 F.3d at 1193 (citing *Hanshaw*, 244 F.3d at 1140 n.10). But we do not read those authorities as establishing a bright line rule that $5,000 is the cutoff between "serious" and "relatively mild" sanctions. For one thing, in the context of contempt sanctions, the $5,000 figure has been cited in dicta only. Further, as recognized by the *Dyer* court, the relative seriousness of a noncompensatory sanction

(continued...)

It may well be that the circumstances presented here justified the imposition of what appears to us to be a punitive sanction. Certainly, Mr. Brace's conduct in flaunting the bankruptcy court's orders is egregious. As for any due process concerns, which courts scrutinize closely in the context of contempt sanctions,[13] the court warned Mr. Brace in its OSC that he would be fined $5,000 for his violations of the court's orders if he did not appear and show cause why sanctions were not warranted; he did not do so. But we continue to have concerns about whether the $5,000 sanction is "mild" or "serious." The cases suggest that this question turns to some extent on the contemnor's ability to pay, *see Hanshaw*, 244 F.3d at 1139 n.10, but the bankruptcy court made no finding on this issue.[14]

We therefore vacate the portion of the Contempt Order imposing the $5,000 sanction and remand to the bankruptcy court so that it can make

---

[12](...continued)
may vary depending on the circumstances, and it is possible for any monetary sanction to assume the criminal character of a fine. *See id.* at n.16 (citing cases). *See also Hanshaw*, 244 F.3d at 1138 (noting that even a $50 noncompensatory fine could be criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance, citing *Bagwell*, 512 U.S. at 829).

[13]*See Hanshaw*, 244 F.3d at 1137 ("To protect against abuse and to ensure parties receive due process, individuals subject to sanction are afforded procedural protections, the nature of which varies depending upon the violation, and the type and magnitude of the sanction. The more punitive the nature of the sanction, the greater the protection to which an individual is entitled.")

[14]Mr. Brace notes the absence of such a finding but does not explicitly contend that he has no ability to pay.

additional findings and explain its conclusions regarding the basis for and amount of the award.

**E.      Remand is also necessary for the bankruptcy court to clarify what actions are required of Mr. Brace to purge his contempt.**

Mr. Brace contends that Contempt Order is unclear as to what he needs to do to purge his contempt. We agree that the Contempt Order is not a model of clarity.[15] It lists the following conduct that explicitly constitutes contempt: (1) the filing of the Arizona Action; (2) entering into the lease agreements; and (3) failure to provide accountings of rents collected. The Contempt Order also finds that "Debtor's failure to turn over rents violates the automatic stay" but does not explicitly find it to be an act of contempt. The OSC required Mr. Brace to turn over "possession and control of the Properties and all Rents to the Trustee or his agents" to avoid contempt sanctions, but the Contempt Order does not explicitly state that the failures to turn over the Properties and rents constitute contempt.[16]

Additionally, Mr. Brace states that he is uncertain whether he must

---

[15]On the other hand, the OSC was very specific about what Mr. Brace needed to do to avoid contempt sanctions: (1) dismiss the Arizona Action; (2) turn over possession and control of the Properties and rents to Trustee; and (3) file a declaration with supporting evidence attesting to actions Mr. Brace took to purge his contempt. Additionally, given the history of this case and Mr. Brace's conduct, this argument seems specious.

[16]Apparently acknowledging that he must turn over the rents, Mr. Brace contends that he does not have the rents to turn over because the funds are in the possession of the GEJ Estate, and he has no authority to turn them over.

pay the monetary sanctions or risk being incarcerated. We do not interpret the Contempt Order as authorizing incarceration for failure to pay the monetary sanctions, which are separate from the writ of bodily detention; any contempt finding and/or further sanction arising from the failure to pay the monetary sanctions would require further notice and a hearing. But the Contempt Order should be amended to clarify this point.

We therefore remand the matter to the bankruptcy court to craft an order that explicitly lays out what Mr. Brace must do to purge his contempt and avoid incarceration.

## CONCLUSION

For these reasons, we AFFIRM the bankruptcy court's finding of contempt, its award of compensatory sanctions in the form of attorney's fees, and its determination that a writ of bodily detention is appropriate. However, we must VACATE the order and REMAND for the bankruptcy court to reconsider and/or justify the $5,000 sanction and to craft a new order that clarifies what Mr. Brace must do to purge his contempt.