317 F.3d 1064
 In re James H. EMERY; In re Cheryl A. Emery, Debtors,
Kasdan, Simonds, McIntyre, Epstein & Martin, Appellant,
v.
World Savings & Loan Association, Appellee.
In re James H. Emery; In re Cheryl A. Emery, Debtors,
Kasdan, Simonds, McIntyre, Epstein & Martin, Appellant,
v.
World Savings & Loan Association, Appellee.
 No. 01-55969.
 No. 01-55971.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 9, 2002.
 Filed January 28, 2003.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Edward J. Horowitz, Pacific Palisades, CA, for the appellant.
 David M. Wiseblood, Berg & Parker LLP, San Francisco, CA, for the appellee.
 Appeal from the United States District Court for the Central District of California; Alicemarie H. Stotler, District Judge, Presiding. D.C. Nos. CV-00-00456-AHS, CV-00-00588-AHS.
 Before: WARDLAW and BERZON Circuit Judges, and ISHII, District Judge.*
 PER CURIAM.
 
 
 1
 The parties, the firm of Kasdan, Simonds, McIntyre, Epstein and Martin ("Kasdan") and World Savings & Loan Association ("World Savings") appeal from cross-summary judgment motions. The district court held that Kasdan converted World Savings' property interest in settlement funds obtained by Kasdan on behalf of its clients, James and Cheryl Emery ("the Emerys"), and was therefore liable for damages. We reverse.
 
 BACKGROUND
 
 2
 This action arose from a bankruptcy proceeding. The current dispute began as (and, in our view, remains) a dispute between World Savings and the Emerys.
 
 
 3
 In 1993 James and Cheryl Emery refinanced their home through World Savings. As security for the loan, the Emerys executed a deed of trust in favor of World Savings, which was subsequently recorded. Paragraph Eighteen of the deed of trust ("Paragraph Eighteen") provides for the assignment to World Savings of the Emerys' rights in any legal cause of action relating to injury or damage to their home. Paragraph Eighteen states:
 
 
 4
 An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damages to the Property ... and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include an action for breach of contract, fraud, concealment of a material fact or for intentional or negligent acts. I assign these rights and any proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name, and may apply any proceeds resulting from this assignment to any amount that I may owe to Lender under the Note and this Security Instrument after deducting any expenses, including attorneys fees, incurred in enforcing these rights. At the request of the Lender, I will sign any further assignment or other document that may be necessary to enforce this assignment.
 
 
 5
 (emphasis added).
 
 
 6
 After refinancing their home, the Emerys discovered construction defects. At this juncture, the Kasdan law firm entered the scene. On behalf of the Emerys and their neighbors, Kasdan sued the contractors who built the housing development (the "underlying litigation").
 
 
 7
 The underlying litigation settled in 1996. After the Emerys paid attorneys fees ($198,686) and costs ($62,250), the Emerys' net share of the proceeds totaled $335,272. At the direction of its client, Kasdan disbursed this amount to the Emerys and to the Emerys' creditors. Neither the Emerys nor Kasdan notified World Savings of the lawsuit.
 
 
 8
 After the Emerys received the settlement proceeds, they defaulted on their loan to World Savings and filed for bankruptcy protection. Although World Savings obtained relief from the automatic bankruptcy stay and foreclosed on the Emerys' home, it did not recoup the full amount of the Emerys indebtedness. With the Emerys in bankruptcy, World Savings points its finger at Kasdan as the party responsible for the shortfall. Hence, the current lawsuit.
 
 
 9
 World Savings filed suit against Kasdan in the United States Bankruptcy Court for the Central District of California, claiming exclusive ownership over the underlying lawsuit and the resulting settlement funds and claiming that Kasdan converted the proceeds by distributing $335,272 to the Emerys and retaining $198,686 in fees. Kasdan cross-claimed for quantum meruit (to recover fees incurred in litigating the Emerys' claim) and for declaratory relief.
 
 
 10
 The parties filed cross-motions for summary judgment. After the bankruptcy court concluded that Kasdan's and World Savings' claims were "related proceedings" under 28 U.S.C. § 157(a), Kasdan and World Savings consented to the bankruptcy court's issuance of a final judgment. See 28 U.S.C. § 157(c)(2). The bankruptcy court entered summary judgment in favor of Kasdan, and, concluding that the summary judgment ended the litigation between Kasdan and World Savings, certified the judgment as final according to Fed.R.Civ.P. 54(b) and Fed. R. Bankr.P. 7054(a).
 
 
 11
 World Savings appealed to the United States District Court for the Central District of California, which reversed the decision of the bankruptcy court. Because we agree with the bankruptcy court, we reverse.
 
 PRELIMINARIES
 A. Jurisdiction
 
 12
 Although both parties urge us to decide this appeal, we have an independent duty to examine our subject matter jurisdiction. Bonner Mall P'ship v. U.S. Bancorp Mortgage Co. (In re Bonner Mall P'ship), 2 F.3d 899, 903 (9th Cir.1993) dismissed on other grounds, 513 U.S. 18, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994). We have jurisdiction if both the bankruptcy court's order and the district court's order are final. Id.; 28 U.S.C. § 158(d).
 
 
 13
 Even though the district court remanded the case to the bankruptcy court for further fact-finding, the district court order is final under the pragmatic approach to finality employed in the bankruptcy context. See Scovis v. Henrichsen (In re Scovis), 249 F.3d 975, 980 (9th Cir.2001). Given the unique nature of bankruptcy proceedings, we balance several policies in determining whether a remand order is final: (1) the need to avoid piecemeal litigation; (2) judicial efficiency; (3) the systematic interest in preserving the bankruptcy court's role as a finder of fact; and (4) whether delaying review would cause irreparable harm. Id. (citing Lundell v. Anchor Constr. Specialists (In re Lundell), 223 F.3d 1035, 1038 (9th Cir. 2000)). We have consistently recognized that when an appeal "could dispose of the case or proceedings and obviate the need for factfinding" the competing considerations usually tip in favor of immediate review. See Scovis, 249 F.3d at 980 (recognizing two exceptions to the general finality rule); Lundell 223 F.3d at 1038 (same). Because this appeal "involves the very existence of the rule pursuant to which the bankruptcy court would be required to make factual findings on remand," we have jurisdiction. Bonner Mall, 2 F.3d at 904.
 
 B. Standard of Review
 
 14
 Because this court is in as good a position as the district court to review the findings of the bankruptcy court, we independently review the bankruptcy court's decision. Atalanta Corp. v. Allen (In re Allen), 300 F.3d 1055, 1058 (9th Cir.2002). We review conclusions of law de novo and findings of facts for clear error. Id.
 
 
 15
 This dispute centers around the interpretation of Paragraph Eighteen in the deed of trust. The meaning of this contractual provision is a question of law, which we review de novo. Kassbaum v. Steppenwolf Prods. Inc., 236 F.3d 487, 490 (9th Cir.2000) cert. denied, 534 U.S. 815, 122 S.Ct. 41, 151 L.Ed.2d 13 (2001). The parties agree that California law governs the contract.
 
 DISCUSSION
 
 16
 Under California law, conversion is the wrongful exercise of dominion over another's personal property in denial of or inconsistent with his rights in the property. Bino v. Bailey (In re Bailey), 197 F.3d 997, 1000 (9th Cir.1999); Weiss v. Marcus, 51 Cal.App.3d 590, 599, 124 Cal. Rptr. 297 (1975). The elements of conversion are (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by wrongful act inconsistent with the property rights of the plaintiff; and (3) damages. Burlesci v. Petersen, 68 Cal.App.4th 1062, 1065, 80 Cal.Rptr.2d 704 (1998). In California, conversion is a strict liability tort: Questions of good faith, lack of knowledge, and motive are ordinarily immaterial. Id. (quoting Moore v. Regents of Univ. of Cal., 51 Cal.3d 120, 144, 271 Cal.Rptr. 146, 793 P.2d 479 (1990)).
 
 
 17
 World Savings contends that Kasdan converted the property interest created by Paragraph Eighteen in two different ways. First, World Savings argues that it had an immediate possessory interest in the litigation proceeds and that Kasdan converted those proceeds by disbursing them to the Emerys. Second, World Savings argues that it had exclusive rights to litigate the underlying cause of action and that Kasdan, by pursuing litigation without World Savings' consent, interfered with World Savings' rights to litigate. We reject both contentions.
 
 A. Conversion of the Settlement Proceeds
 
 18
 Assuming that Paragraph Eighteen created the type of property interest to which the tort of conversion applies,[1] we conclude that Kasdan did not convert World Savings' interest in the settlement proceeds. Kasdan's actions did not injure World Savings and so Kasdan did not convert World Savings' property.
 
 
 19
 Paragraph Eighteen did not vest World Savings with exclusive rights to the settlement proceeds. Rather, Paragraph Eighteen entitled World Savings to demand only the amount which the Emerys "owe[d] to Lender." At oral argument, World Savings recognized that, even if Kasdan had disbursed the settlement funds directly to World Savings — as World Savings alleges Kasdan was required to do — World Savings would have been obliged to reimburse the Emerys for any settlement proceeds over and above the amount "owe[d] ... under the Note."
 
 
 20
 At the time that Kasdan distributed the settlement proceeds to the Emerys, the Emerys were not in default. Because the amount "owe[d] to Lender" was therefore zero, Kasdan did not injure World Savings by disbursing settlement funds directly to the Emerys.
 
 
 21
 World Savings would have us interpret the amount "owe[d] to Lender" as including the entire outstanding balance of the underlying loan, regardless of the Emerys' default status. That is, World Savings urges us to interpret Paragraph Eighteen as an acceleration clause triggered by a recovery by the borrower of damages for injury to the property.
 
 
 22
 The deed of trust reveals, however, that when World Savings meant to draft an acceleration clause, it explicitly did so. For example, Paragraph Twenty-Eight of the same deed of trust states:
 
 
 23
 Acceleration of Payment of Sums Secured. Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or any right in the Property, is sold or transferred without Lender's prior written permission.
 
 
 24
 (emphasis added).
 
 
 25
 Paragraph Nine, which discusses the Lender's rights in the event of a government taking, and Paragraph Five, which discusses the Lender's rights to insurance proceeds, both deal with situations similar to the situation covered by Paragraph Eighteen: All three paragraphs discuss the Lender's rights to proceeds relating to the property and recovered from an outside source. Unlike Paragraph Eighteen, Paragraphs Five and Nine use the term "Sums Secured" to indicate that the Lender has the right to apply proceeds to the underlying debt as opposed to the right to apply proceeds only to amounts currently due and payable. Had World Savings intended for Paragraph Eighteen to operate as an acceleration clause, it could have so stated by using such explicit terms as "Acceleration," "immediate payment" and "Sums Secured," as it did elsewhere in the agreement.
 
 
 26
 The reference to sums "owe[d]," in contrast, is at least ambiguous, and, under California law, must be construed against World Savings. Sun Microsystems, Inc. v. Microsoft Corp., 188 F.3d 1115, 1122 (9th Cir.1999) (stating that ambiguous contract language must be construed against the drafter); Milstein v. Sec. Pac. Nat'l Bank, 27 Cal.App.3d 482, 486, 103 Cal.Rptr. 16 (1972) (refusing to find an acceleration clause where contract language is ambiguous). We therefore conclude that the phrase "owe[d] to Lender" describes amounts currently due and payable.
 
 
 27
 Our interpretation does not deprive Paragraph Eighteen of any independent meaning. Absent Paragraph Eighteen, the deed of trust would have granted World Savings rights in the settlement proceeds in the event of default, but World Savings could not have enforced those rights unless and until it took possession of the Emerys' property through foreclosure proceedings. Cal. Civ.Code § 2888; Kinnison v. Guaranty Liquidating Corp., 18 Cal.2d 256, 261, 115 P.2d 450 (1941). Although a mortgagee out of possession has certain equitable rights to litigation proceeds related to the secured property, even in the absence of a provision such as Paragraph Eighteen, those rights do not extend to situations, such as the present one, where the litigation concerns property damage that occurred before the mortgagee extended the loan. Am. Sav. & Loan Ass'n v. Leeds, 68 Cal.2d 611, 616, 68 Cal.Rptr. 453, 440 P.2d 933 (1968). Paragraph Eighteen therefore gave World Savings the valuable right to obtain settlement proceeds and to retain those proceeds, up to the amount "owe[d]," without the expense of initiating foreclosure proceedings.[2]
 
 
 28
 In summary, because the Emerys were not in default on their loan, World Savings was not entitled to retain any of the settlement proceeds and therefore suffered no injury when Kasdan disbursed those proceeds directly to the Emerys. If World Savings were asserting its conversion claim against a party not in privity with the Emerys, World Savings might be entitled to recover the entire value of the settlement proceeds on the assumption that World Savings would then "be liable to the owner of the remaining interest for any amount the former received in the conversion action that exceeds the amount of his claim or indebtedness." Hartford Fin. Corp. v. Burns, 96 Cal.App.3d 591, 605, 158 Cal.Rptr. 169 (1979). But because World Savings asserts its conversion claim against a party in privity with the Emerys, World Savings can only recover the settlement proceeds to the extent that it was entitled to keep those proceeds, rather than return them to the Emerys. Id. at 605-6, 158 Cal.Rptr. 169; Watson v. Stockton Morris Plan Co., 34 Cal.App.2d 393, 400, 93 P.2d 855 (1939).
 
 
 29
 World Savings, therefore, can only recover the amounts "owe[d]" by the Emerys at the time of the alleged conversion. We have concluded that that amount is zero. Having suffered no injury, World Savings has failed to satisfy the third element necessary for a conversion claim.
 
 B. Conversion of the Cause of Action
 
 30
 We similarly conclude that Kasdan did not convert World Savings' rights in the chose-in-action by successfully litigating the Emerys' claims. In so holding we again assume, without deciding, that this chose-in-action was the type of property interest which can be converted.
 
 
 31
 World Savings did not have exclusive rights to litigate. Paragraph Eighteen merely indicates that World Savings "may, at its option" pursue legal action. Nothing suggests that the Emerys are divested of the right to pursue legal action if World Savings did not exercise that option. Such a conclusion would be absurd. Preventing the Emerys from recovering the very monies which could be used to repay amounts "owe[d]" to World Savings frustrates the purpose of Paragraph Eighteen.
 
 
 32
 We conclude, therefore, that the Emerys retained the right to litigate, conditional on World Savings' right to intervene. To be sure, World Savings was deprived of the opportunity to intervene because the Emerys failed to alert World Savings to the underlying litigation. That conclusion may support a breach of contract claim against the Emerys, but does not support World Savings' conversion claim: Kasdan's actions in creating the very settlement that World Savings now covets were entirely consistent with World Savings' rights to retain settlement proceeds up to the amount "owe[d]" by the Emerys. Because Kasdan's successful litigation efforts were consistent with World Savings' limited property interest, there was no conversion. Weiss, 51 Cal.App.3d at 599, 124 Cal.Rptr. 297 (tort of conversion requires action inconsistent with rights in the property). World Savings' true complaint relates to Kasdan's disbursement of the settlement proceeds to the Emerys, but we have concluded that no injury resulted from that action.
 
 CONCLUSION
 
 33
 For the reasons stated, the district court's judgment is REVERSED.
 
 
 
 Notes:
 
 
 *
 The Honorable Anthony W. Ishii, United States District Judge for the Eastern District of California, sitting by designation
 
 
 [1]
 That assumption is questionable. The California appellate courts have not spoken with one voice with respect to the questions of whether and when a contract right creates a convertible property interest in settlement proceeds, such that an attorney who distributes settlement proceeds to his own client rather than to someone else can be liable for conversionCompare Farmers Ins. Exch. v. Smith, 71 Cal.App.4th 660, 83 Cal.Rptr.2d 911 (1999) and Farmers Ins. Exch. v. Zerin, 53 Cal.App.4th 445, 61 Cal.Rptr.2d 707 (1997) with Kaiser Found. Health Plan Inc. v. Aguiluz, 47 Cal.App.4th 302, 54 Cal.Rptr.2d 665 (1996) overruled on other grounds by Snukal v. Flightways Mfg., Inc., 23 Cal.4th 754, 98 Cal. Rptr.2d 1, 3 P.3d 286 (2000) and Weiss, 51 Cal.App.3d at 597-99, 124 Cal.Rptr. 297. We suspect, however, the better view to be stated by Smith: Creditors should not be allowed to "press-gang [an attorney] into service as a collection agent." 71 Cal.App.4th at 662, 83 Cal.Rptr.2d 911.
 Because conversion is a strict liability tort, the contrary conclusion would impose upon lawyers a duty to investigate thoroughly the financial affairs of their clients prior to instituting any lawsuit. Not only would such a rule be impractical (and virtually impossible in the context of class-action lawsuits), such a rule would unduly interfere with a lawyer's ethical duties to his or her client. "Courts must not forget that the attorney's duty is to his or her client." Id. at 670, 83 Cal.Rptr.2d 911. We need not decide this issue, however, because we conclude that World Savings suffered no injury.
 
 
 [2]
 We express no opinion as to whether World Savings could have contracted for an assignment of litigation proceeds which operated even in the absence of either possession or default. In the related context of rents and profits, California law recognizes the ability of a lender to contract for an absolute assignment of rents and profits which is not contingent on either possession or defaultSee generally Cal. Civ.Code § 2938; In re GOCO Realty Fund I, 151 B.R. 241 (Bankr.N.D.Cal. 1993) (distinguishing between "absolute assignment," "conditional absolute assignment," and "assignment for additional security"). We merely note that this particular contract provision, by framing World Savings' rights to keep the funds assigned in terms of the amount "owe[d]," vested World Savings with an entitlement to keep only amounts currently due and payable.