**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| IN RE: PARKS DIVERSIFIED, L.P., DEBTOR<br><br>TALON DIVERSIFIED HOLDINGS INC.; NORTH VALLEY MALL II, LLC; NORTH VALLEY REGIONAL CENTER LLC; PARKS DIVERSIFIED, LP; RICHARD PARKS, individually and as trustee of the Parks Family Trust; LUCIA PARKS, individually and as trustee of the Parks Family Trust,<br><br>*Plaintiffs - Appellants*,<br><br>v.<br><br>MARC FORSYTHE, an individual; GOE FORSYTHE & HODGES, LLP, a limited liability partnership,<br><br>*Defendants - Appellees*,<br><br>and<br><br>KIMURA LONDON AND WHITE, LLP, a California limited liability partnership, LINDA WONG, an | No. 24-5516<br><br>D.C. No. 8:24-cv-00227-SVW<br><br>OPINION |

individual, MICHAEL S. LEBOFF, an individual, WILLIAM LONDON, an individual, DAVID KLEIN, an individual, DARRELL P. WHITE, an individual, KLEIN & WILSON, an entity of form unknown, MAXX SHARP, an individual, TODD B. BECKER, an individual,

*Defendants*.

IN RE: PARKS DIVERSIFIED, L.P., DEBTOR

TALON DIVERSIFIED HOLDINGS INC.; NORTH VALLEY MALL II, LLC; NORTH VALLEY REGIONAL CENTER LLC; PARKS DIVERSIFIED, LP; RICHARD PARKS, individually and as trustee of the Parks Family Trust; LUCIA PARKS, individually and as trustee of the Parks Family Trust,

*Plaintiffs - Appellants*,

v.

DAVID KLEIN; MARC FORSYTHE, an individual; GOE FORSYTHE & HODGES, LLP, a limited liability

No. 24-5517
D.C. No.
8:23-cv-02230-SVW

partnership;MICHAEL S. LEBOFF, an individual; KLEIN & WILSON, an entity of form unknown; DARRELL P. WHITE, an individual; WILLIAM LONDON, an individual; MAXX SHARP, an individual; KIMURA LONDON AND WHITE, LLP, a California limited liability partnership; LINDA WONG, an individual; TODD B. BECKER, an individual,

*Defendants - Appellees*.

TALON DIVERSIFIED HOLDINGS INC.; NORTH VALLEY MALL II, LLC; NORTH VALLEY REGIONAL CENTER LLC; PARKS DIVERSIFIED, LP; RICHARD PARKS; LUCIA PARKS,

*Plaintiffs - Appellees*,

v.

DAVID KLEIN,

*Defendant - Appellant*,

and

MARC FORSYTHE, GOE

No. 24-5911
D.C. No.
8:23-cv-02230-
SVW

FORSYTHE & HODGES, LLP,
MICHAEL S. LEBOFF, KLEIN &
WILSON, DARRELL P. WHITE,
WILLIAM LONDON, MAXX
SHARP, KIMURA LONDON AND
WHITE, LLP, LINDA WONG,
TODD B. BECKER,

     *Defendants*.

TALON DIVERSIFIED HOLDINGS
INC.; NORTH VALLEY MALL II,
LLC; NORTH VALLEY
REGIONAL CENTER LLC; PARKS
DIVERSIFIED, LP; RICHARD
PARKS; LUCIA PARKS,

     *Plaintiffs - Appellees*,

  v.

DARRELL P. WHITE; WILLIAM
LONDON; MAXX SHARP;
KIMURA LONDON AND WHITE,
LLP,

     *Defendants - Appellants*,

and

DAVID KLEIN, MARC
FORSYTHE, GOE FORSYTHE &

No. 24-5918
D.C. No.
8:23-cv-02230-
SVW

HODGES, LLP, MICHAEL S.
LEBOFF, KLEIN & WILSON,
LINDA WONG, TODD B.
BECKER,

*Defendants.*

TALON DIVERSIFIED HOLDINGS
INC.; NORTH VALLEY MALL II,
LLC; NORTH VALLEY
REGIONAL CENTER LLC; PARKS
DIVERSIFIED, LP; RICHARD
PARKS; LUCIA PARKS,

*Plaintiffs - Appellees*,

v.

TODD B. BECKER,

*Defendant - Appellant*,

and

DAVID KLEIN, MARC
FORSYTHE, GOE FORSYTHE &
HODGES, LLP, MICHAEL S.
LEBOFF, KLEIN & WILSON,
DARRELL P. WHITE, WILLIAM
LONDON, MAXX SHARP,
KIMURA LONDON AND WHITE,
LLP, LINDA WONG,

No. 24-5920
D.C. No.
8:23-cv-02230-
SVW

*Defendants*.

TALON DIVERSIFIED HOLDINGS INC.; NORTH VALLEY MALL II, LLC; NORTH VALLEY REGIONAL CENTER LLC; PARKS DIVERSIFIED, LP; RICHARD PARKS, individually and as trustee of the Parks Family Trust; LUCIA PARKS, individually and as trustee of the Parks Family Trust,

*Plaintiffs - Appellants*,

v.

DAVID KLEIN, an individual; MARC FORSYTHE, an individual; GOE FORSYTHE & HODGES, LLP, a limited liability partnership; MICHAEL S. LEBOFF, an individual; KLEIN & WILSON, an entity of form unknown; DARRELL P. WHITE, an individual; WILLIAM LONDON, an individual; MAXX SHARP, an individual; KIMURA LONDON AND WHITE, LLP, a California limited liability partnership; LINDA WONG, an individual; TODD B. BECKER, an individual,

No. 24-6314
D.C. No.
8:23-cv-02230-
SVW

*Defendants - Appellees.*

IN RE: PARKS, DIVERSIFIED, L.P., DEBTOR

TALON DIVERSIFIED HOLDINGS INC.; NORTH VALLEY MALL II, LLC; NORTH VALLEY REGIONAL CENTER LLC; PARKS DIVERSIFIED, LP; RICHARD PARKS; LUCIA PARKS,

*Plaintiffs - Appellants*,

v.

DAVID KLEIN; MARC FORSYTHE; GOE FORSYTHE & HODGES, LLP; MICHAEL S. LEBOFF; KLEIN & WILSON; DARRELL P. WHITE; WILLIAM LONDON; MAXX SHARP; KIMURA LONDON AND WHITE, LLP; LINDA WONG; TODD B. BECKER,

*Defendants - Appellees.*

No. 24-6638
D.C. No.
8:24-cv-00228-
SVW

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted February 9, 2026
Pasadena, California

Filed March 3, 2026

Before: John B. Owens, Lawrence VanDyke, and Holly A. Thomas, Circuit Judges.

Opinion by Judge VanDyke

---

**SUMMARY**[*]

---

**Bankruptcy**

The panel affirmed the district court's judgment affirming in part the bankruptcy court's dismissal of an adversary proceeding brought by Richard and Lucia Parks, their family real-estate business Parks Diversified, L.P., and several related entities against the Parkses' son David Klein and other defendants.

Klein, through the law firm Goe Forsythe & Hodges LLP, filed a voluntary chapter 11 bankruptcy petition on behalf of Parks Diversified. The Parkses contended that the petition was filed improperly without their consent, but, under a stipulation, the parties agreed to dismissal of the bankruptcy case in exchange for the Parkses' waiver of certain claims. The Parkses, however, along with Parks Diversified and related entitles, later filed a state court

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

complaint against Klein and others.  At defendant Goe Forsythe's request, the bankruptcy court reopened the Parks Diversified bankruptcy case, and Goe Forsythe removed the state-court complaint to the bankruptcy court.  The bankruptcy court granted defendants' motions to dismiss for failure to state a claim and their special motions to strike.  Plaintiffs appealed to the district court, which held that the bankruptcy court had subject-matter jurisdiction over the bankruptcy case because corporate authority to file a bankruptcy is not a question of subject-matter jurisdiction.  The district court held that the bankruptcy court therefore had subject-matter jurisdiction to approve the stipulation and to enforce that stipulation by dismissing claims in the removed proceeding.  The district court remanded the case to the bankruptcy court to vacate any orders that the bankruptcy court lacked jurisdiction to enter and to remand to state court claims over which the bankruptcy court lacked jurisdiction.

The panel concluded that the Court of Appeals had jurisdiction because the district court's order was final under the four-factor test from *In re Emery*.  The need to avoid piecemeal litigation and judicial efficiency favored jurisdiction.  The need to avoid piecemeal litigation and judicial efficiency favored jurisdiction.  The systemic interest in preserving the bankruptcy court's role as a finder of fact was preserved by exercising jurisdiction because the panel's analysis of the merits of this appeal required no factfinding.  Although the parties did not show that delaying review would cause irreparable harm, the factors as a whole favored the conclusion that the district court's jurisdictional order was "final" under the pragmatic *In re Emery* approach.

Agreeing with the Second and Third Circuits, the panel held that if an individual files a voluntary chapter 11

bankruptcy petition purportedly on behalf of an entity but lacks the requisite authority to do so, the bankruptcy court is not deprived of subject-matter jurisdiction over the bankruptcy case. Corporate authority to file for bankruptcy, while important and mandatory, is not jurisdictional. The panel concluded that *Price v. Gurney*, 324 U.S. 100 (1945), which held that if a district court determines that a bankruptcy petition was filed without corporate authority, it must dismiss the petition, did not provide a rule of subject-matter jurisdiction. The panel therefore affirmed the district court's conclusion that the bankruptcy court had subject-matter jurisdiction notwithstanding Klein's authority to file the bankruptcy petition.

The panel stated that it would decide other issues raised by the parties in a subsequent disposition.

**COUNSEL**

Michael G. Dawe (argued), Vincent S. Choi, and Tom R. Normandin, Prenovost Normandin Dawe & Rocha, Santa Ana, California, for Plaintiffs-Appellants.

Ethan T. Boyer (argued), James R. Lance, and Genevieve M. Sauter, Noonan Lance Boyer & Banach LLP, San Diego, California; Gregory B. Emdee (argued) and James J. Kjar, Kjar McKenna & Stockalper LLP, El Segundo, California; Paul A. Grammatico (argued), Grammatico Law Firm, Glendale, California; Jeffrey D. Cawdrey, Andrea K. Williams, and Kathryn M.S. Catherwood, Gordon Rees Skully Mansukhani LLP, San Diego, California; David Klein, Pro Se, San Juan Capistrano, California; Kyra E. Andrassy, Raines Feldman Littrell LLP, Newport Beach,

California; John J. Immordino, Wilson Elser Moskowitz Edelman & Dicker LLP, Los Angeles, California; for Defendants-Appellees.

---

**OPINION**

VANDYKE, Circuit Judge:

There's an old proverb that "blood runs thicker than water." Perhaps. But this case illustrates that, at least sometimes, money trumps both. Family bonds notwithstanding, when greed, money, and power get in the way—as they did here—the most bitter forms of discord and resentment can result.

This case involves a yearslong family feud between Appellants Richard and Lucia Parks ("the Parkses") and their son, Appellee/Cross-Appellant David Klein ("Klein"), over control of a family real-estate business, Appellant Parks Diversified, L.P. ("Parks Diversified"), and several related entities. It ostensibly all started in bankruptcy court, when Klein—purportedly on behalf of Parks Diversified—filed a chapter 11 bankruptcy petition. But the Parkses claimed that *they* were the only general partners of Parks Diversified, that Klein had no authority to file the bankruptcy petition, and that Klein filed the petition as part of a fraudulent scheme to divest his parents of their real-estate interests. The petition stayed mostly still in bankruptcy court for months until the parties agreed to dismiss it, with the question of Klein's authority—or lack thereof—still unresolved.

Today, we're not tasked with deciding the central issue of who owns what. Instead, we must answer a narrower,

more esoteric question: if an individual files a voluntary chapter 11 bankruptcy petition purportedly on behalf of an entity but lacks the requisite authority to do so, does the bankruptcy court lack subject-matter jurisdiction over the bankruptcy case?  The bankruptcy court and district court both said "no."  Joining the reasoning of two other circuits,[1] and declining to create a circuit split, we agree.  Corporate authority to file for bankruptcy—while important and mandatory—is not jurisdictional.  We affirm the conclusion of the district court that the bankruptcy court had subject-matter jurisdiction notwithstanding Klein's authority to file the bankruptcy petition.[2]

## I.  Background

### A.  Act I:[3] Parks Diversified files for bankruptcy—or does it?

The curtain of this case rose on June 22, 2021, when Klein, through the law firm of Goe Forsythe & Hodges LLP ("Goe Forsythe"), filed a voluntary chapter 11 bankruptcy petition on behalf of Parks Diversified in the United States Bankruptcy Court for the Central District of California.  The bankruptcy-petition form required "[a]n individual who is authorized to act on behalf of" Parks Diversified to sign.  Klein signed, purportedly in his capacity as a "General

---

[1] *See New Haven Radio, Inc. v. Meister* (*In re Martin-Trigona*), 760 F.2d 1334, 1340 (2d Cir. 1985); *Protopapas v. Brenntag AG* (*In re Whittaker Clark & Daniels Inc.*), 152 F.4th 432, 443 (3d Cir. 2025).

[2] The parties raise several other issues on appeal.  We will decide those issues in a subsequent disposition.

[3] Though some readers might find The Tale of the Parks Diversified Bankruptcy to be slightly less absorbing than a Shakespearean drama, the district court and the parties referred to the various stages of this case in thespian terms.  For consistency, we do the same.

Partner" of Parks Diversified. A week after the petition was filed, Parks Diversified moved to employ Goe Forsythe as General Counsel. Klein signed the corresponding application on behalf of Parks Diversified, once again as General Partner. The Parkses opposed the motion, arguing that "[c]ounsel should not be employed … because [the] bankruptcy case was not authorized to be filed." The Parkses contended that they were "the co-founders and 97% interest-holders" of Parks Diversified and that the bankruptcy petition "was filed without [their] consent and approval … in bad faith as an improper litigation tactic."

Parks Diversified also moved (again, via Klein, as "General Partner") to appoint the law firm Klein & Wilson ("K&W") as special litigation counsel. The Parkses opposed this motion too—they argued, once again, that both the bankruptcy filing and the motion were unauthorized. They also argued that K&W would have a conflict of interest because it represented Klein in then-pending state-court litigation. Before the motion was granted, K&W filed, on Parks Diversified's behalf, an adversary complaint against the Parkses alleging, among other things, that the Parkses had "improperly siphoned off a substantial amount of money from [Parks Diversified], which was improperly classified as 'loans' to [the Parkses]," in violation of the partnership agreement.

Before the bankruptcy court ruled on the motions to appoint counsel, the Parkses moved to dismiss the bankruptcy case, or convert it to a chapter 7 case, for cause under 11 U.S.C. § 1112(b). The Parkses raised a multitude of arguments in their motion, including that "[t]he bankruptcy case was filed without authorization from the partners of" Parks Diversified and "[was] therefore a legal nullity[] and a fraud on the Court." The Parkses didn't

explicitly argue that the court lacked subject-matter jurisdiction—just that the case should be dismissed for cause, or alternatively, converted to chapter 7.

The bankruptcy court denied the motion "insofar as it request[ed] dismissal of the case," but the denial was "expressly without prejudice." The court then granted the motions to employ Goe Forsythe as general counsel and K&W as special litigation counsel.

The Parkses once again moved to dismiss for cause. Once again, the Parkses raised a host of arguments in support of dismissal, including that "the petition was unauthorized." But before the bankruptcy court could rule on the motion or otherwise decide whether the bankruptcy petition was unauthorized, the Parkses got the dismissal that they wished for. Only it came at a cost: under a stipulation, the parties (including the Parkses) *agreed* to dismiss the case in exchange for the Parkses' waiver of claims against Goe Forsythe and K&W. The bankruptcy court approved the stipulation and dismissed the case.

## B. Act II: The Parkses strike back, in state court, until the case is removed back to bankruptcy court and dismissed.

But it appears that the Parkses experienced buyer's remorse over the stipulation. Eleven months after the Parkses seemingly agreed to a ceasefire, they, along with Parks Diversified and related entities, filed a complaint in California Superior Court. The defendants of the sprawling state-court complaint included Klein, Goe Forsythe, K&W, and others. The complaint accused Klein of orchestrating a scheme (with help from the other defendants) to strip the Parkses of their interest in Parks Diversified and the other plaintiff entities by hijacking Parks Diversified and, among

other things, filing the bankruptcy petition without authority. The complaint enumerated claims for declaratory relief, breach of fiduciary duty, legal malpractice, breach of contract, conversion, elder abuse, and intentional infliction of emotional distress.

At Goe Forsythe's request, the bankruptcy court reopened the Parks Diversified bankruptcy case. The next day, Goe Forsythe removed the state-court complaint to the bankruptcy court. Ten days after that, the bankruptcy court scheduled a hearing and ordered counsel to appear and "show cause why the Court should not abstain and remand the case." At the hearing, Plaintiffs' counsel argued that the bankruptcy court "never had jurisdiction over any bankruptcy of Parks Diversified" because Klein lacked the authority to file the petition. The bankruptcy court rejected that argument, reasoning that the authority issue was a "nuanced question," but not a "jurisdictional question." The court declined to remand the case.

Goe Forsythe, K&W, and Klein all moved to dismiss the claims against them for failure to state a claim, and they also filed special motions to strike under California's anti-SLAPP statute. In response, Plaintiffs moved to remand the case to state court.

The court held a hearing on the motions. At the hearing, Plaintiffs' counsel raised the authority issue again and contended that "whether Mr. Klein had authority" was a key question in determining whether the court had subject-matter jurisdiction. The bankruptcy court asked Plaintiffs' counsel whether the bankruptcy court was required to determine the authority issue before approving the Act I stipulation. "No," Plaintiffs' counsel answered, "I think the Court did what that stipulation would have mandated."

The bankruptcy court proceeded to deny the motion to remand and to grant, without leave to amend, the motions to dismiss and special motions to strike filed by Goe Forsythe, K&W, and Klein.  Plaintiffs appealed to the district court, and the Act II curtain fell.

## C. Act III: The district court rejects Appellants' argument that the authority issue is jurisdictional.

On appeal to the district court, Appellants challenged the bankruptcy-court orders granting the defendants' motions to dismiss and special motions to strike.  The district court held that the bankruptcy court had overstepped the bounds of its "core" jurisdiction and ancillary jurisdiction when it resolved the Act II claims against Klein and other defendants who were not signatories to the Act I dismissal.  But the court held that the bankruptcy court *did* have subject-matter jurisdiction over the Act I bankruptcy case because "[c]orporate authority to file a bankruptcy is not a question of subject matter jurisdiction."  From that conclusion, the court determined that the bankruptcy court possessed subject-matter jurisdiction to approve the Act I stipulation and to enforce that stipulation by dismissing the Act II claims against Goe Forsythe and K&W.  The district court remanded the case to the bankruptcy court with instructions to vacate any orders that the bankruptcy court lacked jurisdiction to enter (as determined by the district court) and to remand claims over which the bankruptcy court lacked jurisdiction to state court.  The Parkses, Parks Diversified, and the related entities appealed.

And now, Act IV.

## II. Jurisdiction

We have "an independent duty to examine our [own] subject matter jurisdiction," even if the parties don't raise the issue. *In re Emery*, 317 F.3d 1064, 1068 (9th Cir. 2003) (per curiam). We have jurisdiction to determine whether we have jurisdiction, and we review our own jurisdiction de novo. *See Hernandez v. Ashcroft*, 345 F.3d 824, 833 n.5 (9th Cir. 2003); *Silver Sage Partners, Ltd. v. City of Desert Hot Springs* (*In re City of Desert Hot Springs*), 339 F.3d 782, 787 (9th Cir. 2003).

We have "jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered" by a district court on an appeal from a bankruptcy judge's decision. 28 U.S.C. § 158(d)(1); *see also* 28 U.S.C. § 158(a). Ninth Circuit cases have established two different tests for whether a district-court order resolving an appeal from a bankruptcy court is final. Under the test from *SS Farms, LLC v. Sharp* (*In re SK Foods, L.P.*), the finality of the district-court order hinges on the finality of the underlying bankruptcy-court order. 676 F.3d 798, 801–02 (9th Cir. 2012). In contrast, the test from *In re Emery* takes a "pragmatic approach to finality" by "balanc[ing] several policies": "(1) the need to avoid piecemeal litigation; (2) judicial efficiency; (3) the systematic interest in preserving the bankruptcy court's role as a finder of fact; and (4) whether delaying review would cause irreparable harm." 317 F.3d at 1068 (citing *Scovis v. Henrichsen* (*In re Scovis*), 249 F.3d 975, 980 (9th Cir. 2001)). Where, as here, the district court remands the case to the bankruptcy court, we apply the four-factor test from *In re Emery*. *See Gugliuzza v. Fed. Trade Comm'n* (*In re Gugliuzza*), 852 F.3d 884, 894 (9th Cir. 2017).

## A.  The first *In re Emery* factor

Analysis of the first *In re Emery* factor largely depends on the task charged to the bankruptcy court on remand from the district court.  When the district court remands to the bankruptcy court "to engage in 'further fact-finding'" before entering judgment, then the first factor disfavors jurisdiction in this court.  *Sahagun v. Landmark Fence Co., Inc.* (*In re Landmark Fence Co., Inc.*), 801 F.3d 1099, 1103 (9th Cir. 2015).  But "if all that remains to do on remand is a purely mechanical or computational task such that the proceedings on remand are highly unlikely to generate a new appeal or to affect the issue that the disappointed party wants to raise on appeal, then immediately deciding the issue will save time without raising the spectre of piecemeal appeals."  *Saxman v. Educ. Credit Mgmt. Corp.* (*In re Saxman*), 325 F.3d 1168, 1172 (9th Cir. 2003) (citation modified); *see also Scholz v. United States Tr.* (*In re Scholz*), 699 F.3d 1167, 1171 (9th Cir. 2012) (finding that the first factor favored appellate jurisdiction where "the bankruptcy court's task on remand would have been primarily a computational one").

Here, the district court charged the bankruptcy court with a "purely mechanical" task on remand: vacate any orders that the bankruptcy court lacked jurisdiction to enter (consistent with the district court's jurisdictional analysis), and remand any remaining claims to state court.  *In re Saxman*, 325 F.3d at 1172.  Nothing in the district-court order requires the bankruptcy court to engage in any further fact finding.  *Cf. In re Gugliuzza*, 852 F.3d at 898 (dismissing for lack of jurisdiction where "the district court remanded the case to the bankruptcy court for fact-finding on a central issue"); *In re Landmark Fence*, 801 F.3d at 1103.  All the bankruptcy court would need to do is apply the district-court order, which clearly and definitively

delineated the scope of the bankruptcy court's ancillary jurisdiction, to each order that fell outside the scope of that jurisdiction.

For the same reason, it is "highly unlikely" that the proceedings on remand to the bankruptcy court would "generate a new appeal" or affect the issue of whether the bankruptcy court lacked subject-matter jurisdiction over the Act I case. *In re Saxman*, 325 F.3d at 1172. Remand to state court is the only thing that the bankruptcy court would do on remand if we declined to exercise jurisdiction, so a new appeal likely wouldn't raise any issues not already raised here. Thus, the need-to-avoid-piecemeal-litigation factor favors jurisdiction.

## B. The second *In re Emery* factor

Our jurisprudence is unclear on the role of the second *In re Emery* factor in the appellate-jurisdiction analysis. In 2015, the Supreme Court decided *Bullard v. Blue Hills Bank*, 575 U.S. 496 (2015), and ruled that a bankruptcy-court order denying confirmation of a Chapter 13 plan is not "final" and thus not immediately appealable. Two years later, a panel of our court drew the following inference from *Bullard*:

> [A]lthough the Supreme Court gave weight to considerations regarding the efficiency of the judicial process, it chose not to adopt a case-by-case approach to this issue. Rather than evaluate whether the appeal of a specific ruling would be efficient in a particular case, the Court adopted the general principle that only decisions that alter the status quo or fix the parties' rights and obligations could be appealed. The Court focused on ensuring "a

> meaningful constraint on the availability of appellate review" as opposed to expanding the universe of appealable interlocutory orders.

*In re Gugliuzza*, 852 F.3d at 897 (footnote and citations omitted); *but see State Bar of Nev. v. Wike* (*In re Wike*), 145 F.4th 1221, 1226 (9th Cir. 2025) (finding appellate jurisdiction in part because "it would be far more efficient" for the court to resolve the appeal immediately). We need not resolve this apparent tension, because judicial efficiency and *Gugliuzza*'s "general principle" both favor appellate jurisdiction here.

To the extent that judicial efficiency matters, it is served by exercising jurisdiction in this case for the same reasons that the first *Emery* factor favors jurisdiction—the risk of piecemeal litigation would be greater if we were to decline to exercise jurisdiction, and piecemeal litigation is generally inefficient. *See, e.g.*, *Ocwen Loan Servicing, LLC v. Marino* (*In re Marino*), 949 F.3d 483, 487 (9th Cir. 2020) (addressing the first two *Emery* factors simultaneously).

To the extent that case-by-case judicial efficiency is irrelevant, the district court's order satisfies the alternative standard that *In re Gugliuzza* articulated. Indeed, the district court's rejection of the appellants' jurisdictional arguments "fix[ed] the parties' rights and obligations" by effectively blessing the Act I stipulation and the Act III dismissal, without leave to amend, of the claims against Goe Forsythe and K&W. *In re Gugliuzza*, 852 F.3d at 897. Either way, the judicial-efficiency factor favors jurisdiction.

## C.  The third and fourth *In re Emery* factors

Our analysis of the merits of this appeal requires no fact-finding, so the "systematic interest in preserving the bankruptcy court's role as a finder of fact" is preserved by exercising jurisdiction. *In re Emery*, 317 F.3d at 1068. And although the parties fail to identify any "irreparable harm" that "delaying review would cause," the factors as a whole favor the conclusion that the district court's jurisdictional order is "final" under the pragmatic approach. *Id.* We thus proceed to the merits of the issue before us.[4]

## III.   Standard of Review

We review the scope of the bankruptcy court's subject-matter jurisdiction de novo. *See Piombo Corp. v. Castlerock Props.* (*In re Castlerock Props.*), 781 F.2d 159, 161 (9th Cir. 1986).

## IV.   Discussion

"In determining the scope of a bankruptcy court's jurisdiction, our analysis begins with the statutory scheme because the 'jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute.'" *Battle Ground Plaza, LLC v. Ray* (*In re Ray*), 624 F.3d 1124, 1130 (9th Cir. 2010) (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995)). Federal law gives "original and exclusive jurisdiction of all cases under title 11" and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11" to "the district courts." 28 U.S.C. § 1334(a), (b). But the "district court may provide that any

---

[4] We do not decide whether we have jurisdiction over any of the other remaining issues on appeal that will be addressed in a subsequent disposition.

or all" of these cases or proceedings "be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). The United States District Court for the Central District of California has referred cases and proceedings to the bankruptcy judges for the district to the fullest extent allowed under section 157. *See In the Matter of Reference of Cases and Proceedings to the Bankruptcy Judges of the Central District of California, and Reference of Appeals to the Bankruptcy Appellate Panel*, Gen. Order No. 13-05, at 1 (C.D. Cal. July 1, 2013).

Appellants propose that there is another limit on bankruptcy jurisdiction—one outside the statutory framework. They argue that the Supreme Court's decision in *Price v. Gurney*, 324 U.S. 100 (1945), not only "limits Bankruptcy Court authority over an unauthorized bankruptcy filing to the dismissal of the bankruptcy" but that that limit is grounded in subject-matter jurisdiction. We disagree that *Price* provides a rule of subject-matter jurisdiction. And although the *Price* rule is mandatory, it doesn't provide a basis for reversing or vacating any of the orders below, even if we assume, without deciding, that Klein filed the chapter 11 petition without the authority of Parks Diversified.

## A. *Price* does not provide a rule of subject-matter jurisdiction.

In *Price*, the Supreme Court expounded on the principle that "the initiation of [bankruptcy] proceedings, like the run of corporate activities, is left to the corporation itself, i.e. to those who have the power of management." 324 U.S. at 104. In that case, Western Tool & Manufacturing Co., a corporation with over 1,000 shares of stock, defaulted on interest payments on bonds, so the bondholders effectively

controlled the company. *Id.* at 101. The bondholders also had a lien on the company's property. *Id.* They petitioned, in state court, to foreclose on the lien, and they obtained a six-figure judgment. *Id.* James Gurney, who owned seven shares of stock and represented other stockholders, filed, in federal district court, a petition for bankruptcy relief in the company's name.[5] *Id.* at 102. Gurney argued that the company's liabilities exceeded its assets and that reorganization was necessary to preserve the stockholders' equity in the company, and he alleged that he had attempted to convince the company's management to file the bankruptcy petition to no avail. *Id.* The bondholders and corporation moved to dismiss the bankruptcy petition as unauthorized, and the district court granted the motion. *Id.* at 103. The court of appeals reversed. *Id.*

The Supreme Court reversed the court of appeals. *Id.* at 107. First, the Court explained that the petition didn't qualify as an involuntary petition—which, at the time, could be filed by "three or more creditors who [had] claims … in the aggregate" of at least $5,000—because stocks didn't count as "claims." *Id.* at 103. Next, the Court turned to Gurney's argument that the bankruptcy was necessary to overcome the company management's breach of trust against the stockholders and that the bankruptcy could proceed "under the familiar rules governing derivative actions." *Id.* at 104. The bankruptcy case was not a derivative action, the Court explained, because it was "not a suit to enforce or protect a corporate right" or "to protect the interests of [the stockholders] as stockholders." *Id.* at 105.

---

[5] Congress didn't establish bankruptcy courts until 1978, over thirty years after *Price* was decided. *See N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 52–53 (1982).

The Court held that the district court could not entertain Gurney's claims because if the district court determined that a bankruptcy petition was filed without corporate authority, "it ha[d] no alternative but to dismiss the petition." *Id.* at 105–06.

The Court couched its ruling in jurisdictional terms, using language that Appellants repeatedly emphasize in their opening brief. The Court stated that there was "no … basis of federal jurisdiction" and that "under the Bankruptcy Act the power of the court to shift the management of a corporation from one group to another, to settle intracorporate disputes, and to adjust intracorporate claims is strictly limited to those situations where a petition has been approved." *Id.* at 105–06. It further explained that "nowhere is there any indication that Congress bestowed on the bankruptcy court jurisdiction to determine that those who in fact do not have the authority to speak for the corporation as a matter of local law are entitled to be given such authority and therefore should be empowered to file a petition on behalf of the corporation." *Id.* at 107. At bottom, the Court stated:

> [A]ny such enlargement of the jurisdiction of the bankruptcy courts is for Congress. It has chosen to withhold from stockholders the right[] to institute these bankruptcy proceedings. In absence of federal incorporation, intracorporate disputes of the character presented here are, as we have said, governed by state law. The creation of a new basis of federal jurisdiction to hear them, pass

on their merits, and adjudicate them is a legislative act.

*Id.*

On its surface, this language may sound like the *Price* Court made a jurisdictional ruling.  But there are at least two compelling reasons why the rule announced by the Supreme Court in *Price* shouldn't be considered jurisdictional.

First, more recent Supreme Court jurisprudence has walked back so-called "jurisdictional" decisions like *Price*, and that jurisprudence cuts against the theory that *Price* is jurisdictional.  "'Jurisdiction,' it has been observed, 'is a word of many, too many, meanings.'"  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998) (quoting *United States v. Vanness*, 85 F.3d 661, 663 n.2 (D.C. Cir. 1996)).  "Courts, including [the Supreme Court], ... have been less than meticulous" in the use of that word—they have often referenced requirements as "jurisdictional" when those requirements lack the potency of a rule of subject-matter jurisdiction and are more properly characterized as claims-processing rules or elements of causes of action.  *Kontrick v. Ryan*, 540 U.S. 443, 454 (2004); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006) ("Subject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief—a merits-related determination." (citation omitted)).

Over the last four decades, the Court has consistently explained that many of its prior passing references to "jurisdiction" do not, in fact, mean "subject matter jurisdiction."  *See, e.g.*, *Arbaugh*, 546 U.S. at 511; *Kontrick*, 540 U.S. at 454; *Henderson ex rel. Henderson v. Shinseki*,

562 U.S. 428, 435 (2011); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161 (2010); *Boechler, P.C. v. Comm'r*, 596 U.S. 199, 203–04 (2022); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 395–97 (1982); *Wilkins v. United States*, 598 U.S. 152, 156–57 (2023); *Steel Co.*, 523 U.S. at 90–91. It has also more clearly articulated a standard for whether a rule really is "jurisdictional": it is "jurisdictional only if Congress 'clearly states' that it is." *Boechler*, 596 U.S. at 203 (quoting *Arbaugh*, 546 U.S. at 515). "Congress need not 'incant magic words,' but the 'traditional tools of statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences.'" *Id.* (first quoting *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013); and then quoting *United States v. Kwai Fun Wong*, 575 U.S. 402, 410 (2015)).

*Arbaugh* provides particularly helpful instruction here. There, the Court decided whether the requirement in Title VII of the Civil Rights Act of 1964 that an employer have "fifteen or more employees" to be an "employer" under the statute, 42 U.S.C. § 2000e(b), is: (a) a rule of subject-matter jurisdiction, or (b), "a substantive ingredient of a Title VII claim," *Arbaugh*, 546 U.S. at 503. The Court determined that the latter is correct. *Id.* at 504. Although federal-question jurisdiction requires that a case "aris[e]" under a federal law (and Title VII doesn't apply if the employee-numerosity requirement is unsatisfied), *id.* at 513 (quoting 28 U.S.C. § 1331), the Court explained that "[n]othing in the text of Title VII indicates that Congress intended courts, on their own motion, to assure that the employee-numerosity requirement is met," *id.* at 514.

Here, Appellants' arguments run counter to *Arbaugh*'s reasoning. Appellants argue that "an unauthorized bankruptcy petition fails as a matter of law to create a federal

question because no voluntary debtor nor any bankruptcy estate has been submitted to the jurisdiction of the court." That's no different than the losing argument in *Arbaugh*: (1) Title VII is the law that provides the sole basis for federal-question jurisdiction; (2) but Title VII doesn't apply to employers with fewer than fifteen employees; (3) therefore, the case doesn't "aris[e]" under Title VII; and (4) therefore, there is no federal-question jurisdiction. *See id.* at 504, 511.

The *Arbaugh* Court rejected that reasoning, *see id.* at 504, 514–516, and we reject it here, too. Section 301 of the Bankruptcy Code says that "[a] voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter." 11 U.S.C. § 301(a). Although the bankruptcy case commences only when the petition is filed "by an entity that may be a debtor," *id.*, "[n]othing in the text of [the statute] indicates that Congress intended courts, on their own motion, to assure that" the petition is filed by an authorized agent of the debtor, *Arbaugh*, 546 U.S. at 514.

Second, other principles cut against the theory that *Price* is jurisdictional. "[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *Id.* (quoting *United States v. Cotton*, 535 U.S. 625, 630 (2002)). Treating the authority-to-file issue as jurisdictional is incompatible with that fundamental rule. Under California law, for instance, "[a]n agency may be created, and an authority may be conferred, by a precedent authorization *or a subsequent ratification*." Cal. Civ. Code § 2307 (emphasis added). And, in general, "the effect of a ratification is that the authority which is given to the purported agent relates back to the time when he

performed the act." *Rakestraw v. Rodrigues*, 500 P.2d 1401, 1405 (Cal. 1972). If an unauthorized person filed a voluntary bankruptcy petition purportedly on behalf of a corporation, the corporation could ratify the filing, and the authority would be treated as having existed at the time of the filing. But that effectively amounts to a waiver of the *Price* rule, which further evinces that the rule is not jurisdictional.

Appellants argue that, if we decide the *Price* rule is not jurisdictional, then a single shareholder of a public corporation like Apple, Inc. could subject all the property of the corporation to the "jurisdiction of [a] Bankruptcy Court" by simply filing a bankruptcy petition. Aside from conflating the concepts of *in rem* jurisdiction and subject-matter jurisdiction, this hypothetical ignores reality. First, a single shareholder *cannot* file a corporate bankruptcy petition on his own—he'd need to hire counsel to file the petition on the corporation's behalf. *See, e.g.*, *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–02 (1993) ("It has been the law for the better part of two centuries … that a corporation may appear in the federal courts only through licensed counsel." (citation omitted)); *Licht v. Am. W. Airlines* (*In re Am. W. Airlines*), 40 F.3d 1058, 1059 (9th Cir. 1994) (per curiam). So, before the petition could even be filed, a shareholder would need to find an attorney (who would be subject to all applicable rules of professional conduct, including Federal Rule of Civil Procedure 11 and Federal Rule of Bankruptcy Procedure 9011) and convince him to file a meritless bankruptcy petition on behalf of a corporation that he has no authority to represent. Even if the shareholder got this far, his lack of authority would be obvious early in the bankruptcy proceedings, and the bankruptcy court would be required to

dismiss the case as unauthorized under *Price* (unless the shareholder voluntarily dismissed his case first, which is precisely what happened here).

Our reasoning comports with the conclusions of two other circuits. *See In re Martin-Trigona*, 760 F.2d at 1340 ("Although the debtor casts this issue as one of subject matter jurisdiction, it is not; the bankruptcy court acquired subject matter jurisdiction over this bankruptcy proceeding when the petition was filed."); *In re Whittaker Clark & Daniels*, 152 F.4th at 443 ("The statutes granting federal courts jurisdiction over bankruptcy cases do not attach jurisdictional significance to the propriety of a debtor's petition."). Aware of no other circuit that has reached a contrary result, we decline to create a circuit split.

## B. *Price* does not provide a basis for reversal or vacatur of any of the bankruptcy court's Act I orders.

As an alternative to their jurisdictional argument, Appellants argue that the *Price* rule embodies "a compulsory legal principle that … the Bankruptcy Court … must determine the filing is authorized before issuing any order which presupposes its subject matter jurisdiction over the putative 'voluntary' debtor and the putative 'bankruptcy estate.'" Axiomatically, *Price*'s core holding—that a court "has no alternative but to dismiss" an unauthorized petition—is binding. 324 U.S. at 106. Even more axiomatically, the bankruptcy court had jurisdiction to decide the *Price* issue itself. *Gonzales v. Parks*, 830 F.2d 1033, 1035 (9th Cir. 1987) ("Filings of bankruptcy petitions are a matter of exclusive federal jurisdiction.").

But here, the bankruptcy court hadn't even *reached* the *Price* issue before the parties agreed to the stipulation, which the bankruptcy court approved to dismiss the Act I

bankruptcy.  Appellants concede (as they must) that the bankruptcy court would have been able to dismiss the Act I bankruptcy pursuant to *Price*.  By the same token, the bankruptcy court did not err by dismissing the case pursuant to the stipulation *without* resolving the *Price* issue.[6]

In their opening brief, Appellants don't challenge any of the other orders that the bankruptcy court issued in Act I before the stipulation.  So the *Price* rule—even though it is mandatory, and even if it must be applied somewhat early in the grand scheme of the bankruptcy proceedings—doesn't provide a basis for reversing or vacating any orders *here*.[7]

## V.  Conclusion

Joining two of our sister circuits, the bankruptcy court, and the district court, we hold that corporate authority to file a bankruptcy petition—while necessary—does not impact a bankruptcy court's subject-matter jurisdiction.[8]

**AFFIRMED.**

---

[6] Appellants conceded as much during an Act II hearing, when Appellants' counsel agreed that the bankruptcy court did *not* need to answer the authority question before approving the stipulation and dismissing the case.

[7] We do not decide here whether the bankruptcy court had jurisdiction over the removed Act II case or whether the bankruptcy court's dismissal of the Act II claims was proper.  All we decide is that any jurisdictional defect in the Act II case (assuming without deciding that one existed) was independent of *Price*.

[8] Appellants' request for judicial notice (Dkt. No. 64) is denied.